Alex Asil Mashiri, Esq. (SBN 283798)
alexmashiri@yahoo.com
**MASHIRI LAW FIRM**
A Professional Corporation
11251 Rancho Carmel Drive #500694
San Diego, CA 92150
Tel: (858) 348-4938
Fax: (858) 348-4939

**Semnar & Hartman, LLP**
Babak Semnar, Esq. (SBN 224890)
Jared M. Hartman (SBN 254860)
400 S. Melrose Drive, Suite 209
Vista, California 92081
Telephone: (619) 500-4187
Fax: (888) 819-8230

Attorneys for Plaintiff, JUAN PAVLOVICH

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN PAVLOVICH, individually and on behalf of others similarly situated, | ) Case No. 3:17-cv-00412-AJB-KSC |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S RESPONSE IN** |
| vs. | ) **OPPOSITION TO DEFENDANT** |
| | ) **DNF ASSOCIATES, LLC'S** |
| | ) **MOTION TO DISMISS PURSUANT** |
| | ) **TO F.R.C.P. 12(b)(6)** |
| ACCOUNT DISCOVERY SYSTEMS, LLC.; and DNF ASSOCIATES, LLC. | ) Date: 1/11/2018 |
| | ) Time: 2:00 p.m. |
| Defendant. | ) Dept: 4A |
| | ) JUDGE: Hon. Judge Battaglia |
| | ) |

TO THE CLERK OF COURT, THE HONORABLE DISTRICT COURT JUDGE, AND ALL PARTIES AND THEIR CONSEL OF RECORD:
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEASE TAKE NOTICE, Plaintiff JUAN PAVLOVICH ("Plaintiff") herein files his Response in Opposition to Defendant DNF ASSOCIATES, LLC's (hereinafter "Defendant DNF") Motion to Dismiss First Amended Complaint ("FAC") on the grounds as laid out in the enclosed Memorandum of Points and Authorities.

DATED: 11-9-17                          **SEMNAR & HARTMAN, LLP**

By: *s/ Jared M. Hartman*
Jared M. Hartman, Esq.
Attorneys for Plaintiff,
JUAN PAVLOVICH

DATED:  11-9-17                         **MASHIRI LAW FIRM**
A Professional Corporation

By: */s/Alex Asil Mashiri*
Alex Asil Mashiri
Attorney for Plaintiff,
JUAN PAVLOVICH

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION…………………………………………………..…1

3

II.     STATEMENT OF FACTS…………………………………….………1

4

III.    LEGAL STANDARD FOR A MOTION TO DISMISS…………………………3

5

IV.     ARGUMENT………………………………………………………...5

6

        A. The Fair Debt Collection Practices Act……………...…………….…...……5

7

8

        B. Defendant DNF is a Debt Collector as Defined by the Fair Debt Collection
           Practices Act……..…………………………………………………...…6

9

10

                1.      Definition of Debt Collector under the FDCPA……………..…7

11

                2.      Defendant DNF Falls into the First Definition of Debt Collector
                        Under the FDCPA………………….………………………..8

12

13

                3.      Defendant DNF's Argument that it cannot be a Debt Collector
                        under the FDCPA because it does not collect on the debts itself is
                        Meritless………………………………………………....10

14

15

16

                4.      Plaintiff Need Not Allege any Further Detailed Facts Than What
                        are Already Alleged Within the FAC…………………………13

17

18

                5.      The Cases on Which Defendant DNF Relies are
                        Distinguishable……………………………………………..14

19

20

                6.      There is a strong public policy need for debt buyers such as
                        Defendant DNF to be regulated by the FDCPA, and any doubt as
                        to its application must be resolved in favor of the consumer……17

21

22

23

        C. The Rosenthal Fair Debt Collection Practices Act………..…………………19

24

                1.  The Definition of Debt Collector under the Rosenthal FDCPA………..…20

25

                2.  Defendant DNF is a Debt Collector under the Rosenthal FDCPA……….21

26

        D. Defendant violated the Calif. FDBPA……………………………………..21

27

V.      CONCLUSION………………………………………………..……24

28

---

# TABLE OF AUTHORITIES

<u>U.S. Supreme Court Cases</u>

*Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807 (1994)……………………….…3

*Aschcroft v. Iqbal*, 556 U.S. 662; 129 S. Ct. 1937;
    173 L. Ed. 2d 868 (2009)……………………………………………………....12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544; 127 S. Ct. 1955;
    167 L. Ed. 2d 929 (2006)…………………………………………………..4, 12

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957)………………………….……4, 5

*Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995)……………………………..11

*Henson v. Santander Consumer USA, Inc.*, 137 S.Ct. 1718 (2017)……………….7, 11

*Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143 (2000)……………...…….…..5, 14

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)……………………………...…….….3, 4

<u>U.S. Court of Appeals Cases</u>

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157
    (Fed. Cir. 1993)……………………………………………………………….3

*Aubert v. American General Finance, Inc.*, 137 F.3d 976 (7th Cir.1998)………..…17

*Barrett v. Tallon*, 30 F.3d 1296, 1299 (10 Cir. 1994)…………………………....4

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162
    (9th Cir. 2006)……………………………………….…………5, 6, 16, 17

*Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989)………………………..……11

*Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309 (11th Cir. 2015)…......7, 19

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010)……………….……11

*Early v. Bankers Life and Casualty Co.,* 959 F.2d 75 (7th Cir.1992)…….…………14

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012)………..……17

*Fox v. Citicorp. Credit Services*, 15 F.3D 1507 (9th Cir. 1994)………………...…11

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir.2012)

*Glazer v. Chase Home Fin. L.L.C.*, 704 F.3d 453 (6th Cir. 2013)………………….12

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*,

    374 F.3d 56 (2d Cir. 2004)……………………………………….………………7

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. 2011)…………..5, 6, 16

*Haddock v. Board of Dental Examiners of Calif.* (9th Cir. 1985) 777 F.2d 462………5

*Hall* v. *City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986)………………..………4

*Hearn v. W. Conf. of Teamsters Pension Tr. Fund,* 68 F.3d 301 (9th Cir. 1995)……12

*Hernandez v. Williams*, 829 F.3d 1068 (9th Cir.2016)………………………………17

*Hester v. Graham, Bright & Smith*, 289 Fed. Appx. 35 (5th Cir. 2008)………..……7

*Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984 (9th Cir. 2017)…………………5

*Maio v. Aetna, Inc.,* 221 F.3d 472 (3d Cir. 2000)……………………………………..5

*McCollough v. Johnson, Rodenburg & Lauinger, L.L.C.*,

    637 F.3d 939 (9th Cir. 2011)……………………………………………………11

*Moriarty v. Larry G. Lewis Funeral Directors Ltd.,* 150 F.3d 773 (7th Cir. 1998)……4

*Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th 2002)………..……3

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*

    268 F.3d 1133 (9th Cir. 2001)………………………………………………14

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790

    (Fed. Cir. 2000)……………………………………………….……………….……4

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)………………7, 8, 15

*Ragin v. New York Times Co.,* 923 F.2d 995 (2d Cir. 1991)…………………………3

*Reichert v. National Credit Systems, Inc.* 531 F. 3d 1002 (9th Cir. 2008)……..……..5

*Riggs v. Prober & Raphael*, 681 F.3d 1097 (9th Cir. 2012)…………………....……19

*Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009)…………………..……9, 10

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045 (9th Cir. Or. 2012)…………...…5

*Shroyer v. New Cingular Wireless Services Inc.*, 622 F.3d 1035 (9th Cir. 2010)…….3

*Thomas v. Guardsmark, Inc.,* 381 F.3d 701 (7th Cir.2004)…………….……………14

*Yeksigian v. Nappi,* 900 F.2d 101 (7th Cir. 1990)…………………………………...3

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1

<u>District Court Cases</u>

*Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, L.L.C.*, 929 F. Supp. 2d 502
    (D. Md. 2013)……………………………………………………………………17

*Akram v. California Business Bureau Inc.*, 2016 WL 7029262 (S.D. Cal. Oct. 3,
2016)………………………………………………………………………………..6

*Barbato v. Greystone Alliance, LLC*, 2017 WL 1193731
    (M.D. Pa. Mar. 30, 2017)…………………………………..…..8, 9, 11, 15

*Bartell v. Nat'l Collegiate Student Loan Trust 2005-3*, 2015 U.S. Dist. LEXIS 54921,
    (No. Dist. Calif. April 27, 2015)……………………………..………..20

*Branco v. Credit Collection Servs. Inc.* 2011 WL 3684503
    (E.D. Cal. Aug. 23, 2011)……………………………………………..19

*Challenger v. Experian Info Solutions, Inc.,* 2007 WL 895774
    (D.N.J. Mar. 22, 2017)……………………………………….……15, 16

*Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069
    (E.D. Cal. Dec. 19, 2007)…………………………………..…………19

*Curten v. Qualify Loan Service Corporation*, 2015 WL 4464582
    (C.D. Cal. Jul. 21, 2015)…………………………………...……..13

*Finley v. Dynamic Recovery Solutions, LLC*, 2015 WL 3750140
    (N.D. Cal. Jun. 15, 2015)………………………………..……..……10

*Gold v. Midland Credit Management, Inc.,* 82 F.Supp.3d 1064 (N.D. Cal. 2015)…..15

*Grier v. Simmons & Clark Jewelers*, 2012 WL 1247171
    (E.D. Mich. Feb. 17, 2012)………………………………………………16

*Gross v. Wells Fargo Bank*, 2014 U.S. Dist. LEXIS 7293
    (So. Dist. Cal. Jan. 21, 2014)…………………………………...……..20

*Kasalo v. Trident Asset Management, LLC,* 53 F. Supp. 3d 1072 (N.D. Ill. 2014)….15

*Little v. World Fin. Network, Inc.*, 1990 WL 516554
    (D. Conn. Jul.  26, 1990)…………………………………………..7, 15, 19

*Masuda v. Citibank, N.A.*, 38 F.Supp.3d 1130 (N.D. Cal. Ap. 18, 2016)…………....20

*McNichols v. Moore Law Group*, 2012 WL 667760 (S.D. Cal. Feb. 28, 2012)….…..18

*Munoz v. Pipestone Fin., L.L.C.*, 397 F. Supp. 2d 1129 (D. Minn. Sep. 12, 2005)…...9

*Plummer v. Atl. Credit & Fin., Inc.*, 66 F.Supp.3d 484 (S.D.N.Y. 2014)…..…...8, 9, 15

*Roe v. Bridgestone Corp.,* 492 F.Supp.2d 988 (S.D. Ind.2007)……………….…...14

*Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577
    (D. Md. 2013)………………………………………………………..7

*Vaccaro v. CVS Pharm., Inc.*, 2013 U.S. Dist. LEXIS 99991
    (S.D. Cal. July 16, 2013)……………………………………...……13

*Weakley v. Redline Recovery Services, LLC* 723 F. Supp. 2d 1341
    (S.D. Cal. 2010)……………………………………………….....20

*Yang v. DTS Financial Group*, 570 F.Supp.2d 1257 (S.D. Cal. Aug. 12, 2008)….…20

Federal Statutes

15 U.S.C. § 1692a……………………………………...…….7, 8, 9, 12, 14, 16, 17

State Statutes

Calif. Civ. Code § 1788.2………………………………...……20, 21

Calif. Civ. Code § 1788.17…………………………………………….....20

Calif. Civ. Code § 1788.50…………………………………………....22

Calif. Civ. Code § 1788.52……………………………………………3, 21, 22

Federal Rules of Court

Fed. R. Civ. Proc., Rule 8……………………………….…....……..4

Fed. R. Civ. Proc., Rule 12……………………………………...…1, 3, 4

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

## I.   INTRODUCTION

The Court is well-aware by now that this matter involves class action allegations for unfair and unlawful debt collection practices against Defendants Account Discovery Systems LLC (hereinafter "ADS") and DNF Associates, LLC (hereinafter "DNF") under the Federal Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Fair Debt Collections Practice Act ("Rosenthal FDCPA"), as well as a claim against Defendant DNF individually under the California Fair Debt Buyer Practices Act ("Calif. FDBPA").

On October 26, 2017, Defendant DNF filed a Motion to Dismiss pursuant to Rule 12(b)(6) ("Motion") contending that Plaintiff Juan Pavlovich ("Plaintiff") cannot state a claim against it.  In particular, Defendant DNF contends that it cannot be held liable under the FDCPA and Rosenthal FDCPA because it is not a "debt collector" as defined by both acts.  Likewise, Defendant DNF claims that it cannot be held liable under the Calif. FDBPA because it did not physically send out the Notice, as the Notice was physically mailed by its agent (Defendant ADS).

Defendant DNF's arguments are without merit.  As will be shown in more detail below, Plaintiff has sufficiently alleged within his First Amended Complaint (hereinafter "FAC") that Defendant DNF is a debt collector under both the FDCPA and Rosenthal FDCPA, and that the California Legislature specifically intended for debt buyers such as Defendant DNF to be automatically liable for letters sent on its behalf by third party debt collectors.

Accordingly, Defendant DNF's Motion should be denied.

## II.   STATEMENT OF FACTS

The relevant facts, as pled in paragraphs 27-44 of Plaintiff's FAC (Dckt. #40), are as follows:

Plaintiff is alleged to have used a Nordstrom credit card, issued in his name, to purchase goods such as clothing and home furnishings without payment being required at the time, with the payment being deducted from the line of credit subject

1   of the credit card, for Plaintiff to make payments thereupon in the future. The
2   payments to repay the balance upon the credit card went into default and was
3   subsequently charged off by the owner of the line of credit on November 30, 2011.

4       Defendant DNF ultimately purchased the debt after charge-off as part of a
5   portfolio of multiple charged off consumer debts. The sole and exclusive purpose of
6   DNF purchasing the portfolio of multiple charged off consumer debts was for
7   collection purposes. Defendant DNF hired Defendant ADS to act as its agent to
8   collect upon this alleged debt sometime in February of 2016.

9       At all times relevant, DNF exercised control over the collection efforts of ADS
10  as its agent, by such things as, but not limited to, including within the servicer
11  agreement signed by both DNF and ADS the agreement that DNF at all times retained
12  the right to inspect any and all collection efforts undertaken by ADS on behalf of
13  DNF, and also retained the right to instruct ADS to cease any collection efforts with
14  which DNF does not agree.

15      Sometime after March 2, 2016, Plaintiff received his first collection notice
16  dated March 2, 2016 (hereinafter referred to as "Validation Notice") from
17  Defendants, attempting to collect a debt in the amount of $1.997.73. While the letter
18  was sent on ADS letterhead, the debt was allegedly owned by DNF, and in sending
19  the Validation Notice ADS was acting on behalf of, at the direction of, and in
20  association with DNF.

21      A copy of the Validation Notice was incorporated by reference as **Exhibit 1**.
22  *See*, Dckt. #43, Notice of Lodgement of Exhibit 1.

23      Defendants' Validation Notice states in part "At our discretion, a statement or
24  correspondence may include post charge off interest…." Defendants' Validation
25  Notice, however, is unclear whether the $1,997.73 debt included the post charge off
26  interest or not. However, neither DNF nor ADS was actually adding interest post
27  charge-off to the amount alleged to be in default. Therefore, there was not any basis
28  at all for including any claim of right to including post charge-off interest.

Moreover, § 1788.52(d)(1) of the California FDBPA requires, in relevant part, a mandatory disclosure within the first written communication for any debt buyer attempting to collect a charged off consumer debt.  The Validation Notice failed to contain the mandatory disclosure as required by the California FDBPA.  Defendant DNF failed to instruct ADS to comply with the California FDBPA.

Finally, Defendants' debt collection practices are largely automated and utilizes standardized form letters or templates, and the same form letter has been used at all relevant times to be sent to all consumers from whom Defendants have attempted to collect such consumer debts.

## III.   LEGAL STANDARD FOR A MOTION TO DISMISS

The purpose of Rule 12(b)(6) motions is to permit the court to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

When a claim is challenged under this Rule, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in light most favorable to the non-moving party. *Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994); *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1068 (9th 2002).

The burden to dismiss the action under Rule 12(b)(6) lies with the moving party.  *Ragin v. New York Times Co.,* 923 F.2d 995, 999 (2d Cir. 1991), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 (1991); *Yeksigian v. Nappi,* 900 F.2d 101, 104-05 (7th Cir. 1990).  And dismissal is only proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services Inc*., 622 F.3d 1035 (9th Cir. 2010).

These rules erect a powerful presumption against dismissing pleadings for failing to state a cognizable claim for relief. *Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir. 1995). *See also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed. Cir. 2000) [noting that the complaint "contains enough detail to allow the defendants to answer. Rule 12(b)(6) requires no more."].

Dismissals are disfavored and are not routinely granted. *Hall* v. *City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986), *cert. denied*, 485 U.S. 940; *See also* Rule 8 (requiring only short, plain statement showing entitlement to relief). A claim will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader can prove *no* set of facts in support of the claim that would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957).

Further, the pleader's stated legal theory and specific requests for relief are not necessarily dispositive in ruling on a Rule 12(b)(6) motion. *Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994); *Conley*, 355 U.S. at 45-46 ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

A claim will not be dismissed merely because the trial court doubts the pleader's allegations or suspects that the pleader will ultimately not prevail at trial. *Scheuer*, 416 U.S. at 236 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"); *Moriarty v. Larry G. Lewis Funeral Directors Ltd.,* 150 F.3d 773, 777 (7th Cir. 1998) (Rule does not allow judge to follow path "that seems 'most likely' on the basis of the complaint").

Further, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545; 127 S. Ct. 1955; 167 L. Ed.

2d 929 (2006) (*citing*, *Conley v. Gibson*, 355 U.S. at 47 (1957).  As will be seen below, Plaintiff's FAC is sufficiently specific as to meet the burdens imposed by Fed. R. Civ. P. 8.  *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. Or. 2012).

Even if the complaint erroneously relies on the wrong legal theory, the motion to dismiss must still be denied if the facts alleged support any valid theory.  *Haddock v. Board of Dental Examiners of Calif.* (9th Cir. 1985) 777 F.2d 462, 464.

Finally, the plaintiff's memorandum or brief can be used to "clarify" allegations of the pleading, as can statements made by the pleader during oral argument, in addition to arguing to deny the moving party's motion.  *Pegram v. Herdrich*, 530 U.S. 211, 229, 120 S.Ct. 2143, 2155 n. 10 (2000); *Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n. 12 (3d Cir. 2000).

## IV.   ARGUMENT

### A.   <u>The Fair Debt Collection Practices Act</u>

The FDCPA, which is encoded in 15 U.S.C. § 1692 *et seq.*, is a federal legislation dealing with unfair and deceptive consumer debt collection practices. 15 U.S.C. § 1692 et *seq.*  The FDCPA was enacted "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017).

The FDCPA is a <u>strict liability statute</u> that "makes debt collectors liable for violations that are not knowing or intentional." *Reichert v. National Credit Systems, Inc.* 531 F. 3d 1002, 1005 (9th Cir. 2008).

The FDCPA is a <u>remedial statute</u>, and must be construed <u>liberally</u> in favor of the consumer. *Clark v. Capital Credit & Collection Serv., Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006).  To determine whether the FDCPA is violated, courts must use the "least sophisticated consumer standard."  *Id.* at 1171.  This standard is "lower than

simply examining whether a particular language would deceive or mislead a reasonable debtor." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 16061-1062 (9th Cir. 2011).  In fact, "the standard is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, particularly when those individuals are targeted by debt collectors." *Id*. at 1062.

Thus, courts must use an objective analysis that takes into account whether the "least sophisticated consumer would likely be misled by a communication." *Id.* at 1061.  "This objective least sophisticated standard ensures that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous." *Clark,* 460 F.3d at 1171.

Whether a plaintiff was actually deceived by the debt collectors' conduct is irrelevant when proving liability under the FDCPA, because a Plaintiff <u>need not</u> show any actual deception to establish a violation of the FDCPA.  *Gonzales,* 660 F.3d at 1062-1063.

A plaintiff does not need to establish a violation of each provision of the FDCPA alleged in the complaint, because <u>a single violation of any FDCPA provision is enough to establish liability</u>.  *Gonzales,* 660 F.3d at 1064 fn. 6.

## B.   <u>Defendant DNF Is a Debt Collector As Defined By The Fair Debt Collection Practices Act</u>

To state a claim under the FDCPA, a Plaintiff must show that: (1) he is a consumer; (2) the defendant is a debt collector; (3) the debt at issue is covered under the FDCPA; and (4) the defendant violated a provision of the FDCPA.  *Akram v. California Business Bureau Inc*., 2016 WL 7029262 at \*2 (S.D. Cal. Oct. 3, 2016).

At the outset, Defendant DNF's Motion only attacks the second element of a FDCPA claim.  In particular, Defendant DNF only argues that it cannot be subject to the FDCPA because it is not a debt collector as defined by the FDCPA.  Defendant does not challenge the remaining elements of the FDCPA claim.

1   Therefore, Plaintiff will only discuss the second element, and show to the Court
2   that Defendant DNF has alleged sufficient facts in his FAC that Defendant DNF is a
3   debt collector under the FDCPA.

4       **1.    Definition of Debt Collector under the FDCPA**

5       The FDCPA defines a "debt collector" in two different ways.  15 U.S.C. §
6   1692a(6); *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013);
7   *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d
8   Cir. 2004); *accord, Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1316
9   n.8 (11th Cir. 2015); *Hester v. Graham, Bright & Smith*, 289 Fed. Appx. 35, 41 (5th
10  Cir. 2008); *Little v. World Fin. Network, Inc.*, 1990 WL 516554, *2–4 (D. Conn. Jul.
11  26, 1990) ("the two prongs of the statutory definition of debt collector are separated
12  by a comma and the word 'or', indicating that there are alternative definitions.").

13      Under the first definition of 15 U.S.C. § 1692a(6), a debt collector is any
14  person *"who uses any instrumentality of interstate commerce or the mails in any*
15  *business the principal purpose of which is the collection of any debts."*

16      Under the second[1] definition of 15 U.S.C. § 1692a(6), debt collector is any
17  person *"who regularly collects or attempts to collect, directly or indirectly, debts*
18  *owed or due or asserted to be owed or due another."*

19      An entity meeting either one of the two definitions qualifies as a debt collector
20  under the FDCPA.  *See Davidson*, *supra*, 797 F.3d 1309; *Pollice v. Nat'l Tax*
21  *Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000); *Sterling v. Ourisman Chevrolet of*
22  *Bowie Inc.*, 943 F. Supp. 2d 577, 585 (D. Md. 2013).

23  ///

24  ///

25
    _____
26  [1] The Supreme Court's recent holding in *Henson v. Santander Consumer USA, Inc.*, 137 S.Ct. 1718
    (2017) only applies to the second definition of debt collector under 15 U.S.C. § 1692a(6) (Henson,
27  137 S.Ct. at 1721 ("the parties briefly allude to another statutory definition of the term 'debt
    collector'—one that encompasses those engaged 'in any business the principal purpose of which is
28  the collection of any debts.' § 1692a(6). But the parties haven't much litigated that alternative
    definition and in granting certiorari we didn't agree to address it either.")

### 2.   Defendant DNF Falls into the First Definition of Debt Collector under the FDCPA

In this case, Defendant DNF falls into the first definition of debt collector under 15 U.S.C. § 1692a(6).

As alleged in the FAC, Defendant DNF purchases charged-off debts with the principal purpose to collect on them.  In other words, the "***purpose***" in purchasing charged-off consumer debts is for the "***purpose***" of collecting those debts from consumers such as Plaintiff.  *See*, ¶¶ 30-33, Dckt. #40.  In fact, Defendant DNF's 30(b)(6) witness readily admitted at his deposition that its sole purpose in purchasing debts is for collection.  *See*, Exh. A to Decl. of Semnar, pp. 77/7-25.  Notably, the applicable definition uses the term "***principal purpose***" not principal "***activities***."

Courts have concluded that a debt buyer, who purchases charged-off debts for the sole purpose of collecting on them are debt collectors pursuant to the first definition of debt collector under 15 U.S.C. § 1692a(6).  *See Plummer v. Atl. Credit & Fin., Inc.*, 66 F.Supp.3d 484, 489 (S.D.N.Y. 2014); *Barbato v. Greystone Alliance, LLC*, 2017 WL 1193731 (M.D. Pa. Mar. 30, 2017) Recon. Denied 2017 WL 4770719 (M.D. Pa.  Oct. 19, 2017); *Pollice*, 225 F.3d at 404 ("there is no question that the 'principal purpose' of [debt buyers] business is the 'collection of any debts,' namely, defaulted obligations which it purchases from municipalities")

In *Plummer,* the court was faced with a debt buyer defendant who purchased a defaulted consumer debt and then placed it with a third-party collector.  Like Defendant DNF does here, the defendant debt buyer argued that it was not a debt collector under the FDCPA.  The district court rejected the argument and found that the debt buyer was a debt collector under the first definition of 15 U.S.C. § 1692a(6).  The district court stated in part the following:

> Plaintiff has sufficiently alleged that Velocity is a debt collector for purposes of this action. Plaintiff states in the complaint that the "principal purpose of [Velocity's] business is the purchase of defaulted consumer debts originally owed or due or alleged to be originally owed

or due to others." More specifically, Plaintiff alleges that Velocity uses the mail in purchasing defaulted consumer debts, usually at a significant discount to their face value, and then seeks to collect on such debts. Plaintiff also states that Velocity purchased Plaintiff's defaulted debt from Atlantic Credit, placed it with Capital Management, and sought to collect on it. *These allegations put Velocity squarely within the first definition of debt collector.*

*Plummer*, 66 F.Supp.3d at 488-89.

Similarly, in *Barbato,* the district court rejected the debt buyers argument that it was not a debt collector under the first definition of 15 U.S.C. § 1692a(6).   The district court stated in part the following:

> In addition to arguing that Crown acquired the Account when it was in "default," Plaintiff also argues that Crown's "principal purpose" is the collection of "any debts." The summary judgment record supports Plaintiff's position. Specifically, it is undisputed that Crown purchases "charged-off receivables," which, as noted above, are defaulted accounts where the consumer has stopped paying on the debt. According to Jessica Foster, Crown's Federal Rule of Civil Procedure 30(b)(6) representative, Crown is "a debt purchaser." While Crown claims that it "does not collect on charged-off receivables," it does not dispute that it "refers all charged-off receivables to third-party, independent servicers" for collection. As a result, there is no dispute that Crown's principal purpose is to acquire accounts in "default" for the purpose of collection. Further, approximately ninety (90) to ninety-five (95) percent of Crown's receivables concern consumers. Therefore, it is determined that Crown's "principal purpose" is the collection of "debts" and, thus, meets the definition of a "debt collector" under § 1692a(6) the FDCPA.

*Barbato,* 2017 WL 1193731 at *10; *See also Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009) (where a purchaser of defaulted debts was held to be a debt collector, even though letters and notices were sent by an outside third-party entity); *Munoz v. Pipestone Fin., L.L.C.*, 397 F. Supp. 2d 1129 (D. Minn. Sep. 12, 2005) (purchaser of defaulted debt portfolios was a debt collector, and the court specifically rejected the argument that Pipestone could not be a debt collector even though the actual

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

collection efforts were performed by a third party with whom the defendant contracted, and the agreement made it clear that it would derive profits from the debt collection activities undertaken by the outside collection agency).

In *Finley v. Dynamic Recovery Solutions, LLC*, 2015 WL 3750140 (N.D. Cal. Jun. 15, 2015), a buyer of defaulted consumer debt was found to be a debt collector under the FDCPA, even though an outside agency sent all letters on behalf of the debt buyer to engage in all collection attempts.  The court stated, "Accelerated is also a debt collector covered by the statute, under the reasoning of *Ruth, McQueen,* and *Suellen*.  Accelerated purchased Plaintiff's debt while it was in default: Plaintiff started receiving collection letters as early as 2001, and Accelerated purchased the debt on January 15, 2010. [Citation omitted] Accelerated is therefore subject to the requirements of the Fair Debt Collection Practices Act, discussed below." *Id*. at *3.

For these reasons, Defendant DNF is a debt collector under the FDCPA.

**3.    Defendant DNF's Argument that it cannot be a Debt Collector under the FDCPA because it does not collect on the debts itself is Meritless.**

Defendant DNF's argument that it cannot be a debt collector under the FDCPA because it does not collect on the debts itself is meritless for primarily two reasons.

**First,** Defendant DNF is a debt collector under the FDCPA because it files collection lawsuits.  While Defendant DNF claims that it never undertakes any collection activities on its own behalf, such a claim is deliberately false and misleading to the Court.

Defendant DNF regularly files debt collection lawsuits as the plaintiff against consumer throughout the Country.  Submitted as Plaintiff's Request for Judicial Notice, No. 1 is a sampling of such debt collection complaints filed in Defendant DNF's name.  Defendant DNF's 30(b)(6) witness also admitted at deposition that it does have a department set up to regularly handle the process of retaining law firms to prepare and initiate litigation in DNF's name, and thereafter respond to discovery,

1   including signing verifications.  *See*, Exh. A to Decl. of Semnar, pp. 52/17-25, 53/1-

2   25, 54/1-25, 55/1-25, 65/5-25, 66/1-5, 126/2-23, and 127/1-22.

3       It is well-established that litigating debt collection lawsuits is debt collection

4   activity.  *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489 (1995); *Donohue v.*

5   *Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) (state court debt collection

6   complaint is communication subject to FDCPA); *McCollough v. Johnson, Rodenburg*

7   *& Lauinger, L.L.C.*, 637 F.3d 939, 951 (9th Cir. 2011) ("[T]he FDCPA 'applies to the

8   litigating activities of lawyers,' including the use of "discovery procedures such as

9   requests for admissions," since "[t]here is no principled distinction to be drawn

10  between [other] types of litigation activities and written discovery."). In *Crossley v.*

11  *Lieberman,* 868 F.2d 566, 569 (3d Cir.1989), the Third Circuit quoted a law journal

12  article positing that "'any attorney who engages in collection activities more than a

13  handful of times per year must comply with the FDCPA.'" (quoting R.

14  Hobbs, *Attorneys Must Now Comply with Fair Debt Collection Law,* X Pa.J.L.Rptr.,

15  No. 46, 3 (Nov. 21, 1987)).

16      This is also supported by the fact that debt collection activities taken by a law

17  firm are as if they are taken by the client itself.  *Fox v. Citicorp. Credit Services*, 15

18  F.3D 1507, 1516 (9th Cir. 1994) ("In order to give reasonable effect to section 1692i,

19  we must conclude that Congress intended the actions of an attorney to be imputed to

20  the client on whose behalf they are taken.").

21      Consequently, it is clear that Defendant DNF does engage in debt collection

22  activities, and any argument by DNF to the contrary is an outright lie.

23      **Second**, even assuming, arguendo, that Defendant DNF does not collect the

24  charged-off debts itself, the fact that they are hiring a third-party debt collector do so

25  is enough to fall under the first definition of debt collector because the exclusive

26  "purpose" of its business in purchasing the charged-off debts is for collection

27  purposes.  *See Barbato*, 2017 WL 1193731 at *10 ("While Crown claims that it does

28  not collect on charged-off receivables, it does not dispute that it refers all charged-off

1   receivables to third-party, independent servicers for collection.  As a result, there is no
2   dispute that Crown's principal purpose is to acquire accounts in default for the
3   purpose of collection.")  *See also*, *Glazer v. Chase Home Fin. L.L.C.*, 704 F.3d 453
4   (6th Cir. 2013) ("[I]f a purpose of an activity taken in relation to a debt is to 'obtain
5   payment' of the debt, the activity is properly considered debt collection.")

6   Furthermore, it is clear from a plain reading of the first prong of the statute that
7   Congress did not intend to limit this definition to only those who purchase charged-
8   off debts and then collect the debt themselves.  If the Legislature had intended such a
9   limitation upon this definition, it clearly could have (and would have) done so.

10   Finally, it is clear that the first definition of debt collector was meant to cover
11   "debt buyers" like Defendant DNF because any other definition would render
12   superfluous the second definition of 15 U.S.C. § 1692a(6).

13   In other words, if only debt collectors are subject to the first definition, then
14   why would Congress enact a second definition?  Especially, since the U.S. Supreme
15   Court recently concluded in *Henson* that debt buyers are not subject to the second
16   definition.  *See Henson*, 137 S.Ct. 1718.

17   So, if debt buyers, like Defendant DNF whose sole purpose is purchase
18   charged-off debts in order to collect on them, are not subject to the first definition of
19   the FDCPA, who is?

20   Interpretations that create superfluity are to be avoided and the courts must
21   therefore reject any conclusion that results in a portion of a statute being rendered
22   superfluous.  *Hearn v. W. Conf. of Teamsters Pension Tr. Fund,* 68 F.3d 301, 304
23   (9th Cir. 1995).

24   To be clear, Plaintiff is not asserting that all debt buyers may be considered
25   debt collectors under the first definition of 15 U.S.C. § 1692a(6).  For example, a debt
26   buyer who solely buys charge-off debts for the purpose of re-selling them for profit to
27   another debt buyer, is not a debt collector because its principal purpose would be "re-
28   selling charge-off debts."  Similarly, a company whose principal purpose is to extend

1   credit to consumers (*e.g.* a bank), but sometimes engages in buying charged-off debts
2   may also not fall under first definition of debt collector under.

3        But this is not the case here.  As explained above, Defendant DNF solely buys
4   charge-off debts in order to collect on them.  It does not buy them to re-sell them for
5   profit.  Nor, does Defendant DNF engage in any other type of business.

6        Accordingly, it is only logical to conclude that Defendant DNF is a debt
7   collector under the FDCPA under the first definition.

8        **4.      Plaintiff need not allege any Further Detailed Facts what are
9                 Already Alleged within the FAC**

10       Relying on *Curten v. Qualify Loan Service Corporation*, 2015 WL 4464582
11  (C.D. Cal. Jul. 21, 2015), Defendant DNF argues that this case is "just like" *Curten* in
12  that Plaintiff has only pled his facts in a conclusory fashion.  *See* Dckt. # 48-1 at p. 7.

13       However, in *Curten*, the primary reason the FDCPA claim was dismissed—
14  with leave to amend—was because the plaintiff failed to allege any facts about the
15  defendant's business purpose.  Here, Plaintiff has specifically alleged that the sole
16  and exclusive purpose of Defendant DNF purchasing charged-off consumer debts is
17  for the purpose of collection.  *See* Dckt. # 40 at ¶ 31.

18       Nevertheless, it is well-settled that complaints need not have detailed factual
19  allegations; rather, complaints need only contain "enough facts to state a claim to
20  relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Claims have "facial
21  plausibility when the plaintiff pleads factual content that allows the court to draw the
22  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,
23  556 U.S. at 678 citing *Twombly*, 550 U.S. at 556.

24       In *Vaccaro v. CVS Pharm., Inc.*, 2013 WL 3776927 (S.D. Cal. Jul. 16, 2013),
25  the Southern District Court rejected the assertion that complaints must be pled with
26  the extremely heightened standard as suggested by Defendant DNF here.  *Vaccaro*,
27  2013 WL 3776927 at *2.  (It does not follow that factual allegations that borrow or
28  echo statutory language are necessarily legal conclusions.  Factual allegations do not

cease to be factual even if they quote a statute's language.)

Moreover, in opposing a motion to dismiss, Plaintiff is afforded flexibility in submitting extrinsic materials to illustrate facts that Plaintiff expects to be able to prove. *Geinosky v. City of Chicago*, 675 F.3d 743, fn. 1 (7th Cir.2012); citing, *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 704 (7th Cir.2004) (denying motion to strike new materials submitted on appeal); *Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992) (reversing dismissal; plaintiff is free to assert new facts in brief opposing motion to dismiss); *Roe v. Bridgestone Corp.,* 492 F.Supp.2d 988, 1007 (S.D. Ind.2007) ("Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate.")

Furthermore, a plaintiff's briefing in opposition to a motion to dismiss may always be used to clarify allegations within the complaint. *Pegram*, *supra*, 530 U.S. at 230. And the Court may also consider such extrinsic matters in deciding whether to grant leave to amend. *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.* 268 F.3d 1133, 1137 (9th Cir. 2001).

By submitting deposition transcripts and the debt collection complaints filed by Defendant DNF that are the subject of Plaintiff's Request for Judicial Notice No 1 (not one of these items of which can be subject to dispute by Defendant DNF), Plaintiff is illustrating to the Court that empirical evidence does exist to prove that Defendant DNF does, in fact, engage in collection activities in its own name, and therefore, it does actually "*use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts*" as defined by 15 U.S.C. § 1692a(6).

### 5. The Cases on which Defendant DNF Relies are Distinguishable

In its Motion, Defendant DNF cites to several cases for the proposition that it is not a debt collector under the FDCPA. *See* Dckt. # 48-1 at p. 4.

However, the cases cited by Defendant DNF are distinguishable.

In *Kasalo v. Trident Asset Management, LLC,* 53 F. Supp. 3d 1072 (N.D. Ill. 2014), the plaintiff offered no evidence to support a showing that the principal purpose of the defendant's business was the collection of any debts, which is in direct contrast to the fact that Plaintiff in the instant matter has specifically alleged that the sole and exclusive purpose of Defendant DNF purchasing portfolios of defaulted charged-off debts is for the purpose of collection. *See*, Dckt. #40, ¶31.

In fact, as mentioned above, a debt buyer who purchases charged-off consumer debts, are debt collectors under the first definition. *See Plummer,* 66 F.Supp.3d at 489; *Barbato,* 2017 WL 1193731; *Pollice,* 225 F.3d at 404.

In *Gold v. Midland Credit Management, Inc.,* 82 F.Supp.3d 1064 (N.D. Cal. 2015), the district court improperly conflated the two separate definitions of "debt collector" under 15 U.S.C. § 1692a(6) and required a showing that Midland Funding engaged in direct collection activities as to the debts at issue in the case rather than determining whether its overall business purpose was the collection of any debts (albeit the plaintiff failed to allege, Midland Funding's true business purpose).

Furthermore, Defendant DNF's own citations to *Gold* are inapposite, because the findings of the court that Defendant DNF pin-point cites to (82 F.Supp.3d 1071-1073) are in the context of the *Gold* court's assessment of the second "regularly collects" definition of "debt collector," which is not at issue here.

The *Gold* decision is also distinguishable in the same manner as the *Kasalo* decision, because in *Gold* the plaintiff offered little to no evidence to support a showing that the principal purpose of the defendant's business was the collection of any debts, whereas Plaintiff in the instant matter has specifically alleged that the sole and exclusive purpose of Defendant DNF purchasing portfolios of defaulted charged-off debts is for the purpose of collection.

*Challenger v. Experian Info Solutions, Inc.,* 2007 WL 895774 (D.N.J. Mar. 22, 2017) is also distinguishable.  In *Challenger* the plaintiff improperly alleged that the original creditor, who actually issued the credit line, was a debt collector despite 15

1    U.S.C. § 1692a(4) specifically excluding such creditors from the FDCPA definition.

2    The same is true for *Grier v. Simmons & Clark Jewelers*, 2012 WL 1247171 (E.D.

3    Mich. Feb. 17, 2012), which also involved in a creditor.

4         Here, Plaintiff is not alleging that the creditor is a debt collector.  Rather,

5    Plaintiff is alleging that Defendant DNF, who purchases numerous charged-off

6    consumer debts, is a debt collector.  Notably, the FDCPA does not have an exception

7    for "debt buyers", like they do for creditors.  Accordingly, the decision in Challenger

8    and Grief are of no help to Defendant DNF.

9         Furthermore, *Challenger* and *Kloth* involved FDCPA claims being filed

10   against **_the original creditors_** who extended the lines of credit that created the debts

11   at issue, as opposed to a debt buyer who purchased the debt after default for the

12   exclusive and singular purpose of collection.  Each of the courts in these rulings also

13   did not address the distinction between the two different prongs in the definition of

14   "debt collector," which means any reasoning and analysis from these rulings is

15   wholly misplaced in the instant matter.

16        The cases cited by Defendant on page 4 of Dckt. # 48-1 are distinguishable as

17   follows: *Johnson* is an unpublished opinion from prior to January 1, 2007, and is

18   therefore not even citable (not even as persuasive authority) pursuant to Fed. Rule of

19   Appellate Procedure 32.1, and also did not provide any analysis whatsoever as to

20   why that plaintiff failed to allege the franchise tax board did not meet the definition

21   of debt collector; *Jara* involved an entity that met an express exclusion from the

22   definition under § 1692a(6)(F)(iii); *Horsewood* did not provide any analysis

23   whatsoever as to why that plaintiff failed to allege the mortgage trustee did not meet

24   the definition of debt collector in a foreclosure setting; *Von Bricken* did not provide

25   any analysis whatsoever as to why that plaintiff failed to allege the Sheriff and

26   County Sheriff's Department did not meet the definition of debt collector in a

27   foreclosure setting; *Branson* involved an entity that met the express exclusions from

28   FDCPA application under both §§ 1692a(6)(F)(iii) and 1692a(6)(A); and *Baldin* also

1  involved an entity that met the express exclusions from FDCPA application under
2  both §§ 1692a(6)(F)(iii) and 1692a(6)(A).

3          Furthermore, the cases cited by Defendant on page 6 of Dckt. #48-1 are
4  distinguishable as follows: *Schlegel* involved claims against an entity where
5  collection was only some incidental aspect of its business; *Junod* involved an entity
6  who met an express exclusion in 15 U.S.C. § 1692(a)(6)(F); and *Hunt* did not provide
7  any analysis whatsoever as to why that plaintiff failed to allege the mortgagee did not
8  meet the definition of debt collector.

9          Plaintiff asserts that these cases are inapplicable to the instant matter because
10 this matter is not brought against an entity that issued a line of credit, is not brought
11 against a mortgage servicer or a mortgage trustee, and is not brought against a public
12 official such as a Sheriff or Sheriff's Department.  To the contrary, unlike any of the
13 above cases cited by Defendant, the instant matter is brought against an entity that
14 purchased a portfolio of multiple charged-off consumer debts, after default, for the
15 single and exclusive purpose of debt collection against consumers.

16          **6.      There is a strong public policy need for debt buyers such as
17                  Defendant DNF to be regulated by the FDCPA, and any doubt as to
18                  application must be resolved in favor of the consumer**

19          As indicated above, the FDCPA is remedial statutes that must be interpreted
20 liberally to protect debtors from abusive debt collection practices.  *Evon v. Law
21 Offices of Sidney Mickell*, 688 F.3d 1015, 1025 (9th Cir. 2012) ("We decline to read
22 the [FDCPA] in a way that is antithetical to Congress's express intent to protect
23 consumers from abusive debt collection practices."); *Hernandez v. Williams*, 829
24 F.3d 1068, 1079 (9th Cir.2016); *Clark v. Capital Credit & Collection Servs.*, 460
25 F.3d 1162, 1176 (9th Cir. 2006), ("[T]he FDCPA should be construed liberally to
26 effect its remedial purpose"); *also see Ademiluyi v. PennyMac Mortg. Inv. Trust
27 Holdings I, L.L.C.*, 929 F. Supp. 2d 502 (D. Md. 2013) ("permitting a corporate entity
28 [mortgage purchaser] to evade liability for indirect collection activity undertaken

through a corporate affiliate (mortgage servicer) would allow corporate entities to circumvent the FDCPA by relying on affiliated entities, as opposed to third parties. Such a result contradicts this Court's obligation to construe broadly the FDCPA to effectuate its remedial purpose.").

As such, any ambiguity or uncertainty with respect to whether Defendant DNF is a debt collector must be resolved in favor of Plaintiff.

Furthermore, one justification for applying the FDCPA to entities such as Defendant DNF is the fact that such entities do not have any concern for preserving consumer "good will", which means they have no interest in self-regulation to ensure that abusive conduct is not undertaken.

According to the legislative history of the FDCPA, creditors who engage in the initial transaction with the consumer that created the debt are such entities that "generally are restrained by the desire to protect their good will when collecting past due accounts," and for that reason are not covered by the FDCPA; whereas, entities who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them," are covered because there is a need to ensure oversight since such entities have no motivation for self-regulation. S. Rep. 95–382, at 2 (1977), 1977 WL 16047, *2, reprinted in 1977 U.S.C.C.A.N. 1695, 1696; *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir.1998) ("Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill," creditors who attempt to collect debts "in their own name and whose principal business is not debt collection ... are not subject to the [FDCPA].").

Neither third party collectors, nor entities whose principal or sole business is the purchase of defaulted debts for collection have "good will" in that sense–they are simply not interested in preserving good customer relations with the consumer because they are not in the business of securing future relations with the consumer. *See, e.g., Gonzales*, *supra*, 660 F.3d at 1059 n. 1 (9th Cir. 2011) (referencing "the

sizeable growth in the debt buying industry" and documenting "that the average price for purchase of an obsolete debt at $0.045 per dollar").  To be sure, the consumer is not their client at all, unlike in scenarios involving original creditors whose client is the consumer.  As one court explained:

> [T]here exists a logical distinction between the two types of entities identified in the alternative segments of the definition. The primary activity of an ordinary retailer (for example) is not the collection of debts, though it may regularly try to collect debts from its own customers. Such a company is constrained naturally in its debt collection activities with its own customers by concern over the effect of generating adversarial relationships. No such natural constraints exist if a company whose primary purpose is not debt collecting, such as a retailer, regularly collects debts for other companies, however, since any adversarial relationships stemming from debt collecting are generated with other companies' customers, and do not affect that company's primary activity. Furthermore, if a company's primary purpose is debt collection, then the natural constraints also do not apply, since that company's primary purpose is not dependent upon favorable relationships with customers. Thus, there are two situations where natural constraints do not protect against objectionable debt collection practices. The statutory definition of debt collector covered by the Act's prohibitions precisely identifies these two situations.

*Little* 1990 WL 516554, at *2–4; *accord Davidson,* 797 F.3d at 1316 n.8.

As Defendant DNF does not have any concerns for maintaining such "good will" with the consumer as a creditor with whom the consumer initiates transactions for credit, FDCPA for policy reasons dictate that Defendant DNF must be subject to the Act.

Accordingly, Defendant DNF's motion to dismiss Plaintiff's FDCPA claim should be denied.

## C.   <u>The Rosenthal Fair Debt Collection Practices Act</u>

California has adopted the Rosenthal FDCPA, which is the state version of the FDCPA.  *See Riggs v. Prober & Raphael*, 681 F. 3d 1097, 1100 (9th Cir. 2012).  Like the FDCPA, the Rosenthal FDCPA is a strict liability statute.  *Costa v. Nat'l Action*

*Fin. Servs*., 634 F. Supp. 2d 1069, fn. 7 (E.D. Cal. Dec. 19, 2007); *Branco v. Credit Collection Servs. Inc.* 2011 WL 3684503 at *9 (E.D. Cal. Aug. 23, 2011).

California Civil Code § 1788.17, which is a provision under the Rosenthal FDCPA, incorporates the requirements of the FDCPA. Cal. Civ. Code § 1788.17. Therefore, any violation of the FDCPA is a violation of the Rosenthal FDCPA, specifically Civil Code § 1788.17. *McNichols v. Moore Law Group*, 2012 WL 667760 (S.D. Cal. Feb. 28, 2012).

**1. The Definition of Debt Collector under the Rosenthal FDCPA.**

Under the Rosenthal FDCPA, a "debt collector" is defined as any person (including a partnership, corporation, or any other entity) who (1) regularly engages in debt collection (2) in the ordinary course of business, (3) on behalf of him or herself or others. (Civ. Code § 1788.2(c); *Weakley v. Redline Recovery Services, LLC* 723 F. Supp. 2d 1341, 1346 (S.D. Cal. 2010).

Simply put, the definition of "debt collector" is anyone who engages in "debt collection". Civ. Code § 1788.2(c); *Weakley* 723 F. Supp. 2d at 1346. While Defendant simply adopts its previous arguments from its flawed analysis of the definition under the FDCPA, Defendant utterly fails to appreciate that the definition of "debt collection" under the Rosenthal Act is defined in subdivision (b) as "any act or practice in connection with the collection of consumer debts". Defendant does not even cite to the definition of "debt collection" under § 1788.2(b).

It is well-established that the definition of "debt collector" under the Rosenthal FDCPA is much broader than under the FDCPA and includes any person (including a partnership, corporation, or any other entity) who, in the ordinary course of business, collects a debt on behalf of him or herself or others. *Gross v. Wells Fargo Bank*, 2014 WL 232272 at 3 (S.D. Cal. 2014); *Weakley*, 723 F. Supp. 2d at 1346; *See, e.g. Masuda v. Citibank, N.A.*, 38 F.Supp.3d 1130, 1134 (N.D. Cal. Ap. 18, 2016) ("The definition of "debt collector" under California's Rosenthal Fair Debt Collection Practices Act is broader and more inclusive than the definition under the federal Fair

Debt Collection Practices Act (FDCPA), because the Rosenthal Act's definition allows for those collecting debts on their own behalf to be considered debt collectors."). In fact, the term specifically includes creditors. *Id.*

**2. Defendant DNF is a Debt Collector under the Rosenthal FDCPA.**

Defendant DNF argument that it can never meet the definition of "debt collector" under Civil Code § 1788.2(c) of the Rosenthal Act is meritless. Defendant is a debt buyer who purchases charged-off debts and then attempts to collect on it via "any act or practice". As indicated above, the definition of debt collector under the Rosenthal FDCPA is much broader and even includes creditors. In fact, it is so broad that even a credit counseling organization was a "debt collector," under Rosenthal FDCPA where it regularly took payments from consumers and distributed those sums to consumer's creditors. *Yang v. DTS Financial Group*, 570 F.Supp.2d 1257 (S.D. Cal. Aug. 12, 2008). Therefore, as a debt buyer, Defendant DNF falls into the broad definition of debt collector under the Rosenthal FDCPA.

Accordingly, Defendant DNF's motion to dismiss Plaintiff's Rosenthal FDCPA claim should be denied.

**D.    Defendant Violated the Calif. FDBPA**

Under the Calif. FDBPA, a debt buyer, must provide with its first written communication with the debtor the following notice:

> "You may request records showing the following: (1) that [insert name of debt buyer] has the right to seek collection of the debt; (2) the debt balance, including an explanation of any interest charges and additional fees; (3) the date of default or the date of the last payment; (4) the name of the charge-off creditor and the account number associated with the debt; (5) the name and last known address of the debtor as it appeared in the charge-off creditor's or debt buyer's records prior to the sale of the debt, as appropriate; and (6) the names of all persons or entities that have purchased the debt. You may also request from us a copy of the contract or other document evidencing your agreement to the debt.

*See Cal. Civ. Code* § 1788.52(d)(1).

A "debt buyer" is defined as a person or entity that regularly engages in the business of purchasing charged-off consumer debt for collection purposes, whether collecting debts for itself, hiring a third party for collection, or hiring an attorney for collection litigation. *See Cal. Civ. Code* § 1788.50(a)(1).

It is clear that the Calif. FDBPA intended for all letters sent by third-party collectors to be treated as if they are sent by the debt buyer itself, because the letters are being sent on behalf of the debt buyer.

As Defendant DNF is a debt buyer under the Calif. FDBPA, because it purchased charged-off debts and hired third-party collectors to collect on those debts, then any and all letters sent by Defendant ADS on behalf of Defendant DNF are treated as if they were sent by Defendant DNF itself for purposes of the Calif. FDBPA.

Because the first communication that was sent to Plaintiff (the March 2016 Validation Notice) did not contain the required statutory language under Civil Code § 1788.52(d)(1), then Defendant DNF is liable for such failure.

Legislative history from the time the Calif. FDBPA was passed confirms this conclusion.   Filed under Plaintiff's Request for Judicial Notice, No. 2 are the comments as to the purpose of the Calif. FDBPA.  On page 4, the purpose of the FDBPA is stated as being:

> [T]o provide better documentation of alleged debts to consumers who are contacted by debt collectors, and to reduce the occurrence of debt collection activities directed toward time-barred debt, or to the wrong person, or both. It does so by establishing clear, enforceable standards governing the documentation required to support the collection of purchased delinquent or charged-off debt, particularly in collection litigation.  According to the author's office, the debt buying industry has become a significant focus of public concern, related, in part, to the inadequacy of documentation maintained by the industry in support of its debt collection activities and litigation. There have been widespread accounts of debt buyer collection efforts, including collection litigation, against the wrong person, or targeting debt that is time-barred or has already been paid. Collection efforts have become

increasingly misdirected, as consumer debt is sold and resold, repeatedly, without reliable documentation evidencing its origin. This bill is a response to these concerns.

Plaintiff's Request for Judicial Notice, No. 3 clarifies the importance of the consumers' right to access to information verifying the alleged debt.  Page 4 reads:

> Accordingly, this bill prohibits a debt buyer from contacting a debtor unless the debt buyer has access to a copy of a contract or other document evidencing the debtor's agreement to the debt or responsibility for incurring the debt, as well as other specific factual information establishing the buyer's right to collect. This essential factual information includes, among other things, the debt balance at charge off, the date of default or last payment, and the names and addresses of the charge-off creditor, debt buyer, and debtor as they appear in the records of the debt. The bill also requires the debt buyer to provide the information or documents to the debtor without charge within 15 days upon request of the debtor, and to include a specified notice informing the debtor of this right. These requirements seek to ensure that the consumer will at least have basic information about the debt in question that is necessary to determine a next step, including filing an answer if a complaint has been served.

If Defendant DNF's position were correct, then one must query the following: If the Legislature expressly stated that the purpose of the Calif. FDBPA was to provide better documentation and clarity to consumers with respect to debt collection efforts by debt buyers, and that the Legislature specifically defined debt buyer to include those entities that hire third-parties to engage in the collection activities on behalf of the debt buyer, then why would the Legislature leave a glaring loophole to insulate the debt buyer from liability for failing to include mandatory disclosures within the communications to the consumer simply because the communication was sent by the third-party agent instead of the debt buyer?

Moreover, if the Legislature specifically intended for the consumer to be better informed and to be provided access to records and documentation of the alleged debt, then why would the Legislature permit the debt buyer to deprive consumers from

1  receiving such information simply by hiring a third-party agent to send the letters
2  without providing mandatory disclosures informing the consumers that they have the
3  right to request the records and documentation that the Legislature clearly intended
4  for the consumer to have the right to access?

5       To the contrary, it is abundantly clear that the Legislature did not intend for
6  debt buyers (such as Defendant DNF) to be insulated from liability simply because
7  they hire third-parties to send letters on their behalf.   To hold otherwise would
8  completely undermine the spirit and purpose of the Calif. FDBPA.   As such,
9  Defendant DNF in this matter is automatically liable for any failures of its agent,
10  Defendant ADS, to comply with the Calif. FDBPA.

11       Accordingly, Defendant DNF's motion to dismiss Plaintiff's Calif. FDBPA
12  claim should be denied.

13  ## V.    <u>CONCLUSION</u>

14       For the reasons stated above, Plaintiff respectfully requests that the Court deny
15  Defendant DNF's Motion in its entirety or in the alternative, give Plaintiff leave to
16  file a Second Amended Complaint.

17

18  DATED:  11-9-17         **SEMNAR & HARTMAN LLP**

19       By: <u>*/s/ Jared M. Hartman*</u>
20       Jared M. Hartman, Esq.
         Attorney for Plaintiff,
21       JUAN PAVLOVICH

22

23  DATED:  11-9-17         **MASHIRI LAW FIRM**
         A Professional Corporation
24

25       By: <u>*/s/Alex Asil Mashiri*</u>
         Alex Asil Mashiri
26       Attorney for Plaintiff,
27       JUAN PAVLOVICH

28