BRENDAN H. LITTLE (NYSBN 4874517)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Facsimile: (716) 853-5199
Email: blittle@lippes.com

*Pro Hac Vice* Attorney for Defendants
ACCOUNT DISCOVERY SYSTEMS, LLC and
DNF ASSOCIATES, LLC

JEFF POOLE
**HAMRICK & EVANS, LLP**
2600 West Olive Avenue, Suite 1020
Burbank, CA 91505
Telephone: (818) 763-5292
Facsimile: (818) 763-2308
Email: jpoole@hamricklaw.com

Attorneys for Defendants
ACCOUNT DISCOVERY SYSTEMS, LLC and
DNF ASSOCIATES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN PAVLOVICH, individually and on behalf of others similarly situated,<br><br>                  Plaintiff,<br><br>    v.<br><br>ACCOUNT DISOCVERY SYSTES, LLC and DNF ASSOCIATES, LLC<br><br>              Defendants. | CASE NO.  17-cv-412-AJB-KSC<br><br><br>**DECLARATION OF BRENDAN H. LITTLE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

*(left margin, vertical text)* LIPPES MATHIAS WEXLER FRIEDMAN LLP
Buffalo. New York

## DECLARATION OF BRENDAN H. LITTLE

1.      I am the counsel of record for Defendant DNF Associates, LLC ("DNF") in the above matter.

2.      I submit this Declaration in opposition to Plaintiff's Motion to Compel.

3.      A true and accurate copy of the transcript of oral argument on October 13, 2017 in <u>McAdory v. DNF Associates, LLC, et al.</u>, 2017 WL 5071263 (D. Oregon Nov. 3, 2017) as **Exhibit A**.

4.      I declare under the penalty of perjury that the foregoing is true and correct.

Dated: December 13, 2017

/s Brendan H. Little
Brendan H. Little, Esq.

LIPPES MATHIAS WEXLER FRIEDMAN LLP
Buffalo, New York

- 1 -

# Exhibit A

1                 IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF OREGON

3    JILLIAN McADORY, an individual   )
     residing in Multnomah County,    )
4                                      )
               Plaintiff,             ) No. 3:17-cv-00777-HZ
5                                      )
          vs.                         ) October 13, 2017
6                                      )
     M.N.S. & ASSOCIATES, LLC, and    ) Portland, Oregon
7    DNF ASSOCIATES, LLC, foreign     )
     limited liability companies.     )
8                                      )
               Defendants.            )
9    ---------------------------------

10

11

12

13

14

15                        **MOTION HEARING**

16                   TRANSCRIPT OF PROCEEDINGS

17          BEFORE THE HONORABLE MARCO A. HERNANDEZ

18             UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

```
 1                            APPEARANCES

 2    FOR THE PLAINTIFF:     Kevin A. Mehrens
                             Law Offices of Kevin A. Mehrens
 3                           319 S. W. Washington Street
                             Suite 614
 4                           Portland, OR  97204

 5                           Kelly D. Jones
                             Attorney at Law
 6                           819 S. E. Morrison Street
                             Suite 255
 7                           Portland, OR  97214

 8    FOR THE DEFENDANT:     Brendan H. Little (by phone)
                             Lippes Mathias Wexler Friedman LLP
 9                           50 Fountain Plaza
                             Suite 1700
10                           Buffalo, NY  14202

11                           Jordan M. New (by phone)
                             Law Office of Jordan Michael New, PC
12                           1001 S. W. Fifth Avenue
                             Suite 1100, #483
13                           Portland, OR  97204

14    COURT REPORTER:        Nancy M. Walker, CSR, RMR, CRR
                             United States District Courthouse
15                           1000 S. W. Third Avenue, Room 301
                             Portland, OR  97204
16                           (503) 326-8186

17

18

19

20

21

22

23

24

25
```

                        P R O C E E D I N G S

1                  THE COURT:  Please be seated.

2                  THE CLERK:  Your Honor, we are here today for oral

3     argument in McAdory versus M.N.S. & Associates LLC, et al.,

4     Case No. 17-cv-777.  We have two participants on the phone and

5     the plaintiff's counsel here.

6                  Please announce yourself.

7                  MR. JONES:  Kelly Jones for plaintiff, Ms. McAdory,

8     Your Honor.

9                  MR. MEHRENS:  Kevin Mehrens for plaintiff, Your

10    Honor.

11                 THE COURT:  Good morning.

12                 Who is on the phone?

13                 MR. LITTLE:  Good morning, Your Honor, Brendan Little

14    with Lippes Mathias Wexler Friedman on behalf of Defendant DNF

15    Associates, LLC.

16                 MR. NEW:  Good morning, Your Honor, Jordan New,

17    N-e-w, on behalf of defendant, local counsel.

18                 THE COURT:  Good morning.

19                 Mr. Little, are you going to be arguing for defense?

20                 MR. LITTLE:  I am.

21                 THE COURT:  It's your motion.  What do you want to

22    tell me?  I've read all the stuff, by the way.

23                 MR. LITTLE:  Okay, Judge.  If you're up to speed, I

24    think the point we need to jam home -- and I will file

1   supplemental authority if Your Honor would like, this

2   afternoon, as a third Court has now gone the same way with

3   respect to the *Kasalo* and *Gold* decisions, which hold that you

4   cannot be deemed a debt collector or your principal purpose is

5   not debt collection if you're not sending letters or not

6   making telephone calls.

7          The newest case comes two weeks ago from the Northern

8   District of Indiana.  It's *Mitchell*, and that is a post-*Henson*

9   case, the Supreme Court case that was decided in June, which

10  again is doing the same thing, saying the debt buyer cannot be

11  deemed a debt collector by definition of the statute if it's

12  not actually doing the collecting, meaning the verb.

13         We -- our position is here, on this motion to dismiss

14  pursuant to 12(b)(6), that the Complaint fails to state any

15  kind of factual base or factual allegation to support the fact

16  that DNF is in fact a debt collector.

17         Given the state of the law, where we are with the

18  Supreme Court in *Henson* and these three District Court cases,

19  albeit outside the District of Oregon, but one being within

20  the Ninth Circuit -- the *Gold* case specifically, from the

21  Northern District of California -- I don't think it's ever

22  possible, given this landscape, that an Amended Complaint or a

23  Second Amended Complaint can factually state a basis to hold

24  that DNF is a debt collector.

25         THE COURT:  Was the case out of Indiana -- By the

1   way, what's the citation for that case?

2              MR. LITTLE:  Sure.  It is 2 -- 2017 Westlaw 4303804,

3   and it was decided on September 28th of this year.

4              THE COURT:  And what's the name of it?

5              MR. LITTLE:  It's *Mitchell v. LVNV Funding, LLC*.

6              THE COURT:  And in that case, was that decided at a

7   motion to dismiss or at a motion for summary judgment?

8              MR. LITTLE:  It was decided on a motion for summary

9   judgment.

10             THE COURT:  Have any of the cases that you cited to

11  me for your perspective on this issue been decided at motion

12  to dismiss, or have they all been summary judgment?

13             MR. LITTLE:  They are all 56 motions, Your Honor.

14             THE COURT:  In this case, as I recall in the

15  Complaint, they said something about -- or there's a claim in

16  there regarding agency.  Does that make any difference to you?

17             MR. LITTLE:  It does not, Judge, because the cases I

18  cited in my initial brief from the Ninth Circuit are clear

19  that in order to be held liable under the FDCPA as a debt

20  collector, you have to first meet the definition -- the

21  statutory definition of debt collector.

22             So you'll see from that *Mitchell* case, the chief

23  judge there says, Look, I don't need to go into the agency

24  theory because it's my opinion that LVNV, the debt buyer, does

25  not meet the statutory definition of debt collector, so the

1    argument regarding agency is moot.

2            THE COURT:  Do you know why they had to wait until

3    summary judgment to get that figured out as opposed to

4    disposing of it on a motion to dismiss?

5            MR. LITTLE:  Well, I think the *Kasalo* and *Gold* cases,

6    you know, were pre-*Henson*, so we didn't have our Supreme

7    Court's reasoning and rationale and their thought process in

8    defining a debt collector.

9            Here, I think, interestingly, the case -- the

10   *Mitchell* case, it's got a 2012 index number and it was fully

11   briefed, from what I can read from the decision, prior to the

12   Supreme Court deciding *Henson* in June of this year.  But I

13   think the *Henson* decision has allowed this Court specifically

14   to recognize or realize that there's got to be some kind of

15   debt collection activity.

16           The important principle that was highlighted by our

17   Supreme Court is that it does not matter that the debt buyer

18   purchased the debt after the accounts or the debts were in

19   default.  I think a lot of the cases prior to *Henson* and some

20   of the cases that my opponent relies on in attempting to

21   defeat the motion rely on that principle, specifically in the

22   Pennsylvania cases, where the Courts, their reasoning and

23   their rationale is that, look, the debt buyer is purchasing

24   these debts after they have gone into default; then, of

25   course, they must be a debt collector.  And that has now been

1    expressly rejected by the Supreme Court in *Henson*.

2              THE COURT:  Well, the Supreme Court in *Henson*, were

3    they talking about -- There's two different paragraphs that

4    define what a debt collector is, correct, or two different

5    phrases, I should say, number one and number two, and they

6    were talking about number one, were they not?

7              MR. LITTLE:  They were.

8              THE COURT:  Or were they talking about number two?

9    I think I have that upside down.

10             MR. LITTLE:  Well, they were -- the core issue

11   decided in *Henson* was whether it's the debt -- collecting on a

12   debt due, owed to another, and that is what the issue was

13   decided in *Henson*.  What is left open, and which the issue has

14   been narrowed in this motion is, is a debt buyer -- is a debt

15   buyer who doesn't do any collection efforts and contracts with

16   third parties, is their principal purpose debt collection?

17   And that's the prong that's left to be determined here.

18             THE COURT:  That's right.  So in *Henson* they were

19   talking about people who regularly collect.  And in this case,

20   as I understand it, the plaintiff is relying on the first

21   phrase, defining a debt collector as somebody who uses any

22   instrumentality of interstate commerce or the mails in any

23   business, the principal purpose of which is the collection of

24   any debt.  Is that your understanding as well?

25             MR. LITTLE:  That's my understanding as well.

1        THE COURT:  And so, I mean, why do I even care what

2   *Henson* says if they're talking about the other part of the

3   definition?

4        MR. LITTLE:  Well, I think that *Henson* is important

5   because in that -- in their analysis, the Supreme Court is

6   saying, We cannot -- it doesn't matter to us when the debt is

7   acquired by the debt buyer, whether it is a performing

8   receivable or if it is in default at the time that the debt

9   buyer has acquired it.

10       And that is the basis for the rationale that

11  the -- for the cases my opponent relies on in attempting to

12  defeat the motion.  And I think *Henson* is important because

13  it's rejecting that principle generally, whether you're

14  looking at prong 1, which we're talking about here, or prong

15  2, which was, you know, decided in *Henson.*

16       THE COURT:  All right.  Thank you.

17       Let me hear from the other side.  Then I'll get back

18  to you.

19       MR. LITTLE:  Thank you.

20       MR. JONES:  Good morning, Your Honor.

21       THE COURT:  Good morning.

22       MR. JONES:  Do you have a specific question or do you

23  want me to start off?

24       THE COURT:  Go ahead.

25       MR. JONES:  So on *Henson*, I think defense counsel is

```
 1    really smoke and mirrors, as I think the Court has already
 2    realized.  In Henson, the Supreme Court said absolutely
 3    nothing about the first prong, which is all that's at issue
 4    here.  And the Court was very clear, the Supreme Court, that
 5    it wasn't addressing the first prong.
 6         And defense counsel's argument or defendant's
 7    argument that the cases that plaintiff supports for this
 8    principal purpose definition, all these cases and the parts of
 9    the cases that are cited in our brief discuss the principal
10    purpose definition.  Nothing that Henson did, even though some
11    of these cases were pre-Henson, had anything to do with what
12    the discussion is or the arguments in these cases as to
13    principal purpose.  Henson is just completely irrelevant here,
14    Your Honor.
15         DNF and other debt buyers certainly would like
16    nothing more than to have a decision that says that the very
17    statute that regulates their industry doesn't regulate them,
18    just like an original creditor would love nothing more to say
19    that, in extending credit, that the Truth in Lending Act
20    doesn't apply to it.  But it does.  That's why we have two
21    prongs here.
22         All the Supreme Court did in Henson was look at the
23    second part of the prong, which clearly says that's about
24    regularly collecting debts that are owed or due to be owed to
25    another.  That was the issue.  So can an entity like Santander
```

1   that generally extends credit and happened to purchase a

2   portfolio of defaulted debts and collect on them, can

3   Santander be a debt collector?

4           Well, it certainly could be a debt collector under

5   the first prong.  Just as in all the cases that defense

6   counsel cites, you'll see that they're all original creditor

7   cases, where plaintiffs tried to bring an action under the

8   FDCPA based upon original creditor, whether it's Wells Fargo,

9   whether it's other banks, whether it's Reliable Credit.  These

10  are all -- they have one thing in common, all these entities.

11  They're original creditors, so they don't meet the definition.

12          And the Supreme Court in *Henson* merely looked at that

13  second prong and said if the debts are owned by the party,

14  whether they originated them, whether they purchased them in a

15  sale or whatnot, then that second prong doesn't apply.  So now

16  we need to look at the first prong.  That first prong is the

17  principal purpose.

18          We've cited -- plaintiff has cited many facts on

19  information and belief and otherwise that DNF is a debt

20  collector because their principal purpose is debt collection.

21  This is a 12(b)(6), as Your Honor pointed out.  We need

22  discovery.  If those facts are in contention, then we'll get

23  discovery on those facts.

24          All of the cases cited by defendant, as Your Honor

25  correctly pointed out, were all motions for summary judgment

and Rule 56 cases.  *Gold* in particular, which -- *Gold* and

*Kasalo,* which Defendant DNF relies on quite heavily, in *Gold*

the Court simply said after the motion for summary judgment,

after discovery was allowed to be conducted, that the

plaintiff just had offered no evidence that the defendant in

that case -- one of the defendants, which is Midland Funding,

LLC -- actually did anything other than as a special purpose

vehicle that just purchased debts and held them, and then they

had another collection arm underneath the same umbrella,

Encore Capital Management, that would go out and collect on

the debts.

Now, as I point out in the brief, I think the

plaintiff, to be fair to Gold in that case, because they had

two corporate defendants that were of the same entity, didn't

put much time into, you know, establishing facts to show that

Midland Funding was indeed a debt collector under the statute,

because it already had Midland Credit Management there as a

defendant.

THE COURT:  So is it your position that *Gold* is

wrong?

MR. JONES:  I can't say, sitting here, that *Gold* is

wrong.  I think there are some parts of the analysis that rely

too heavily on some flaws in the *Kasalo* opinion.  But quite

honestly, there was just no evidence, even after discovery, as

to Midland Funding.

```
 1              I mean, I guess in hindsight, if the plaintiff in
 2   Gold would have put more time to that case -- I can tell you
 3   that Midland Funding, of course, is a defendant in a myriad of
 4   FDCPA lawsuits, and they are a debt collector because they sue
 5   people in their own name, tens of thousands of people in their
 6   own name across the country.  Those facts weren't before the
 7   Court, so I can't say that the Court decided that wrong.
 8   Those facts were just not before the Court in Gold to decide
 9   that issue as to Midland Funding.
10              Kasalo, I do think, on the other hand, Your Honor --
11   I think that case was incorrectly reasoned, for the reasons
12   that I point out in my brief.  And they simply just conflate
13   the first prong with the second prong in the section that I
14   cite in the brief where the Court says, Well, the FDCPA
15   already has a definition of debt collector, and that refers to
16   the definition in the second prong to decide what the first
17   prong is, which are two completely independent clauses,
18   purposefully, because they regulate different types of
19   entities.
20              Because in the principal purpose, it's the principal
21   purpose of collecting any debts, where the second prong is
22   strictly limited to debts that you're collecting on behalf of
23   another.  Thus, once a debt buyer purchases these debts and
24   owns them, rather than a collection agency that's collecting
25   on behalf of an original creditor, then the second prong just
```

1   is inapplicable, as the Supreme Court found in *Henson*.  So

2   thus we look to the first prong.

3           And that's why there's two prongs, so that these

4   entities, like DNF, these debt purchasers, also fall under the

5   provisions of the Act.  If not -- and I don't want to make too

6   many policy arguments, but I think the Court can understand

7   that that would leave a gigantic gaping hole in the FDCPA, and

8   companies would simply structure themselves as, you know,

9   hiring other collection agencies to collect on their behalf,

10   even though they're not original creditors.

11           The intent of the Act is to not regulate original

12   creditors, but regulate these third parties, whether they

13   purchase these debts or not, because their principal purpose

14   is debt collection.

15           THE COURT:  It kind of depends on what you define as

16   the principal purpose, right, because they're going to

17   argue -- the defense is going to argue to me, Our principal

18   purpose isn't debt collection.  Our principal purpose is

19   acquiring debt, and we hire somebody else to do the

20   collection, and so that's how you define the principal

21   purpose.

22           MR. JONES:  And I understand the defense's attempts

23   on that.  And our argument, as I think I say in the brief, is

24   to look at this through a small keyhole, right.  The principal

25   purpose of the collection of any debts is just literally going

 1    out, knocking on doors, and doing that stuff.  And I think

 2    that points to some analogies in the brief that -- you know,

 3    that sort of attack that reasoning.

 4           A principal purpose of a business is, you know, one,

 5    what it makes money on; and then, two, what its activities

 6    are.  I think as I said in the brief, to look at that

 7    principal purpose and to define it that narrowly upon that

 8    doesn't give true description to what the idea of principal

 9    purpose is.

10           THE COURT:  Well, I'll go back and read *Gold* and

11    *Kasalo*, but I think that's exactly what they did, is they

12    defined it quite narrowly, contrary to your perspective on

13    this issue.

14           MR. JONES:  I think I would agree with you, Your

15    Honor, on *Kasalo*.  And I think that, quite frankly, the

16    reasoning -- I mean, I also do think that there was -- in my

17    memory of *Kasalo*, it was a motion for summary judgment.  There

18    was a lot less facts certainly established through the

19    discovery phase of what that particular entity -- I think it

20    was Trident, what their principal purpose actually is.

21           But I do think the reasoning -- so I think in *Gold*,

22    as I said before, I don't necessarily think that's what the

23    Court in *Gold* was saying.  I think the Court in *Gold* was

24    saying, Give me something.  You've given me absolutely nothing

25    besides one statement back here that says, Hey, what do they

1    own these debts for, just to look at them?

2           It is possible, I think, to have a, quote, unquote,

3    debt buyer whose principal purpose is not debt collection.

4    But that would be an entity that purchases debts, perhaps, and

5    then just sells them back off on the market, kind of like a

6    house flipper or something, right.  Maybe then there could be

7    an argument that -- I could still argue that the principal

8    purpose is still debt collection in a larger sense, but then I

9    guess you could say that they're kind of flipping them.

10   They're buying them, they're selling them off, right.  They're

11   making no money off the actual collection of the debt.

12   They're not at the head of this operation, like DNF.  Maybe in

13   that case you could make an argument that the principal

14   purpose of a, you know, debt seller who is just buying them on

15   the market and reselling them, their principal purpose isn't

16   debt collection.

17          But I think for a company like DNF, in the

18   allegations, and debt buyers that, you know, hire various

19   different collection agencies to collect on them until they're

20   successful, reap all the profits from that debt collection,

21   obviously orchestrate that whole network and decide on the

22   parameters of the debt and what amounts that the collection

23   agencies will keep and what amounts they get back and, you

24   know, provide all the sensitive information from these

25   consumers, including Social Security numbers and addresses and

1    such, to facilitate that collection from those consumers --

2    and many of these debt buyers sue.

3            And it's not in our brief, Your Honor, because it

4    actually came to my attention much later, but it has come to

5    my attention that DNF itself has now started filing lawsuits

6    in Oregon in its own name against Oregon consumers.  And we

7    have 32 cases, all of them but one -- there was one case which

8    I discovered after our response that was filed prior to when

9    our response was filed, on July 27, 2017.  All the rest of the

10   cases are after August 14.  And there are 31 other cases that

11   are filed against consumers.

12           I think that's -- if I would have known these facts,

13   these would be in plaintiff's briefing certainly, because

14   filing lawsuits against consumers is clearly debt collection.

15   In fact, it's the most probably compelling form of debt

16   collection, if you want to use that adjective.  And sure, they

17   use attorneys, unlike collection agencies, to sue people.  But

18   as *Fox*, the Ninth Circuit case, shows and many other cases,

19   and just as basic legal principles provide -- of course, my

20   client here is Ms. McAdory.  An entity can't sue -- when an

21   entity sues in its own name, even when it uses a lawyer, it is

22   suing in its own name, and it has to be that way.

23           And that level of debt collection, I think if it's

24   relevant to Your Honor, we would certainly, if given leave to

25   amend, if necessary, would put that in -- would put that in a

1    supplemental Amended Complaint.

2              THE COURT:  It doesn't matter whether they're a debt

3    collector -- what you're suggesting is they're a debt

4    collector generally, even though -- and that then triggers the

5    Act, as opposed to what they did in this case.

6              MR. JONES:  Correct, Your Honor, especially when we

7    look at the first prong, the principal purpose of debt

8    collection.  The principal purpose is a larger objective, the

9    purpose of the business overall, not necessarily what happens

10   to the, you know, particular plaintiff or debt collection.  I

11   think that type of collection activity would still be relevant

12   to determine a principal purpose.  But overall, the principal

13   purpose of the business has to be defined by its overall

14   actions, profits, and really purpose, I think, as an

15   objective.

16             THE COURT:  All right.  Thank you.

17             MR. JONES:  Thank you, Your Honor.

18             THE COURT:  Mr. Little, what's your response?

19             MR. LITTLE:  Well, Judge, I would object on the

20   introduction of litigation.  But since we are there, I don't

21   think it changes the analysis.  It's the same scenario.  DNF

22   is contracting with a third party to liquidate the assets that

23   it owns.

24             And, in fact, when Your Honor and opposing counsel

25   have the opportunity to read this *Mitchell* case, that was the

1  same argument made by plaintiff's counsel there.  They said,

2  Judge, the debt buyer has to be a debt collector because they

3  file lawsuits in their own name.  And that argument was

4  expressly rejected by the Northern District of Indiana.  They

5  said that doesn't make a difference.  We still don't see the

6  actual verb "collection," meaning we don't see a debt buyer

7  actually making telephone calls, sending letters, doing any

8  other activities to be -- that would result in them being a

9  debt collector.  I think the statute does not contemplate debt

10  buyer.  I think that, you know, we -- if we need to enlarge

11  the scope of the statute, then Congress has to make that

12  change.

13         I think there are -- I'm aware of at least one state

14  that now has a Debt Buying Act that applies -- and it's

15  California -- that applies specifically to debt buyers,

16  because apparently the legislature in California believes that

17  the Rosenthal Fair Debt Collection Practices Act, which is the

18  state version of the federal act, and the federal act do not

19  apply to debt buyers, so they codified in 2014 their own

20  California Fair Debt Buying Act.

21         I think that, you know, DNF does not meet that

22  definition.  And I think there are a lot of scholarly articles

23  out there that are suggesting that Congress would have to

24  amend the statute to include a debt buyer who doesn't make

25  telephone calls or send letters or do any other activity in

1    order to collect on debts.

2            THE COURT:  Thank you, Mr. Little.

3            With that, I will be taking this matter under

4    advisement and will be sending out my opinion and order after

5    I have completed my research.

6            Thank you both very much.  That's all for now.

7            MR. JONES:  Thank you, Your Honor.

8            MR. MEHRENS:  Thank you, Your Honor.

9            MR. LITTLE:  Thank you, Your Honor.

10

11

12            (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                --oOo--

2

3            I certify, by signing below, that the

4        foregoing is a correct transcript of the record

5        of proceedings in the above-titled cause.  A

6        transcript without an original signature,

7        conformed signature or digitally signed signature

8        is not certified.

9

10

11        /s/ Nancy M. Walker                    12-6-17

12        _____   _____
          NANCY M. WALKER, CSR, RMR, CRR         DATE
13        Official Court Reporter
          Oregon CSR No. 90-0091
14

15

16

17

18

19

20

21

22

23

24

25

## #

**#483** [1] - 2:12

## /

**/s** [1] - 20:11

## 1

**1** [1] - 8:14
**1000** [1] - 2:15
**1001** [1] - 2:12
**1100** [1] - 2:12
**12(b)(6** [2] - 4:14, 10:21
**12-6-17** [1] - 20:11
**13** [1] - 1:5
**14** [1] - 16:10
**14202** [1] - 2:10
**17-cv-777** [1] - 3:5
**1700** [1] - 2:9

## 2

**2** [2] - 5:2, 8:15
**2012** [1] - 6:10
**2014** [1] - 18:19
**2017** [3] - 1:5, 5:2, 16:9
**255** [1] - 2:6
**27** [1] - 16:9
**28th** [1] - 5:3

## 3

**301** [1] - 2:15
**31** [1] - 16:10
**319** [1] - 2:3
**32** [1] - 16:7
**326-8186** [1] - 2:16
**3:17-cv-00777-HZ** [1] - 1:4

## 4

**4303804** [1] - 5:2

## 5

**50** [1] - 2:9
**503** [1] - 2:16
**56** [2] - 5:13, 11:1

## 6

**614** [1] - 2:3

## 8

**819** [1] - 2:6

## 9

**90-0091** [1] - 20:13
**97204** [3] - 2:4, 2:13, 2:15
**97214** [1] - 2:7

## A

**above-titled** [1] - 20:5
**absolutely** [2] - 9:2, 14:24
**accounts** [1] - 6:18
**acquired** [2] - 8:7, 8:9
**acquiring** [1] - 13:19
**act** [2] - 18:18
**Act** [7] - 9:19, 13:5, 13:11, 17:5, 18:14, 18:17, 18:20
**action** [1] - 10:7
**actions** [1] - 17:14
**activities** [2] - 14:5, 18:8
**activity** [2] - 6:15, 17:11, 18:25
**actual** [2] - 15:11, 18:6
**addresses** [1] - 15:25
**addressing** [1] - 9:5
**adjective** [1] - 16:16
**advisement** [1] - 19:4
**afternoon** [1] - 4:2
**agencies** [4] - 13:9, 15:19, 15:23, 16:17
**agency** [4] - 5:16, 5:23, 6:1, 12:24
**ago** [1] - 4:7
**agree** [1] - 14:14
**ahead** [1] - 8:24
**al** [1] - 3:4
**albeit** [1] - 4:19
**allegation** [1] - 4:15
**allegations** [1] - 15:18
**allowed** [2] - 6:13, 11:4
**amend** [2] - 16:25, 18:24
**Amended** [3] - 4:22, 4:23, 17:1
**amounts** [2] - 15:22, 15:23
**analogies** [1] - 14:2
**analysis** [3] - 8:5, 11:22, 17:21
**announce** [1] - 3:7
**APPEARANCES** [1] - 2:1

**applies** [2] - 18:14, 18:15
**apply** [3] - 9:20, 10:15, 18:19
**argue** [3] - 13:17, 15:7
**arguing** [1] - 3:20
**argument** [9] - 3:4, 6:1, 9:6, 9:7, 13:23, 15:7, 15:13, 18:1, 18:3
**arguments** [2] - 9:12, 13:6
**arm** [1] - 11:9
**articles** [1] - 18:22
**assets** [1] - 17:22
**ASSOCIATES** [2] - 1:6, 1:7
**Associates** [2] - 3:4, 3:16
**attack** [1] - 14:3
**attempting** [2] - 6:20, 8:11
**attempts** [1] - 13:22
**attention** [2] - 16:4, 16:5
**Attorney** [1] - 2:5
**attorneys** [1] - 16:17
**August** [1] - 16:10
**authority** [1] - 4:1
**Avenue** [2] - 2:12, 2:15
**aware** [1] - 18:13

## B

**banks** [1] - 10:9
**base** [1] - 4:15
**based** [1] - 10:8
**basic** [1] - 16:19
**basis** [2] - 4:23, 8:10
**BEFORE** [1] - 1:17
**behalf** [5] - 3:15, 3:18, 12:22, 12:25, 13:9
**belief** [1] - 10:19
**believes** [1] - 18:16
**below** [1] - 20:3
**Brendan** [2] - 2:8, 3:14
**brief** [9] - 5:18, 9:9, 11:12, 12:12, 12:14, 13:23, 14:2, 14:6, 16:3
**briefed** [1] - 6:11
**briefing** [1] - 16:13
**bring** [1] - 10:7
**Buffalo** [1] - 2:10
**business** [4] - 7:23, 14:4, 17:9, 17:13
**buyer** [14] - 4:10, 5:24, 6:17, 6:23, 7:14,

7:15, 8:7, 8:9, 12:23, 15:3, 18:2, 18:6, 18:10, 18:24
**buyers** [5] - 9:15, 15:18, 16:2, 18:15, 18:19
**Buying** [2] - 18:14, 18:20
**buying** [2] - 15:10, 15:14

## C

**California** [4] - 4:21, 18:15, 18:16, 18:20
**cannot** [3] - 4:4, 4:10, 8:6
**Capital** [1] - 11:10
**care** [1] - 8:1
**Case** [1] - 3:5
**case** [21] - 4:7, 4:9, 4:20, 4:25, 5:1, 5:6, 5:14, 5:22, 6:9, 6:10, 7:19, 11:6, 11:13, 12:2, 12:11, 15:13, 16:7, 16:18, 17:5, 17:25
**cases** [21] - 4:18, 5:10, 5:17, 6:5, 6:19, 6:20, 6:22, 8:11, 9:7, 9:8, 9:9, 9:11, 9:12, 10:5, 10:7, 10:24, 11:1, 16:7, 16:10, 16:18
**certainly** [5] - 9:15, 10:4, 14:18, 16:13, 16:24
**certified** [1] - 20:8
**certify** [1] - 20:3
**change** [1] - 18:12
**changes** [1] - 17:21
**chief** [1] - 5:22
**Circuit** [3] - 4:20, 5:18, 16:18
**citation** [1] - 5:1
**cite** [1] - 12:14
**cited** [6] - 5:10, 5:18, 9:9, 10:18, 10:24
**cites** [1] - 10:6
**claim** [1] - 5:15
**clauses** [1] - 12:17
**clear** [2] - 5:18, 9:4
**clearly** [2] - 9:23, 16:14
**CLERK** [1] - 3:3
**client** [1] - 16:20
**codified** [1] - 18:19
**collect** [6] - 7:19, 10:2, 11:10, 13:9, 15:19, 19:1
**collecting** [6] - 4:12,

7:11, 9:24, 12:21, 12:22, 12:24
**Collection** [1] - 18:17
**collection** [29] - 4:5, 6:15, 7:15, 7:16, 7:23, 10:20, 11:9, 12:24, 13:9, 13:14, 13:18, 13:20, 13:25, 15:3, 15:8, 15:11, 15:16, 15:19, 15:20, 15:22, 16:1, 16:14, 16:16, 16:17, 16:23, 17:8, 17:10, 17:11, 18:6
**collector** [21] - 4:4, 4:11, 4:16, 4:24, 5:20, 5:21, 5:25, 6:8, 6:25, 7:4, 7:21, 10:3, 10:4, 10:20, 11:16, 12:4, 12:15, 17:3, 17:4, 18:2, 18:9
**commerce** [1] - 7:22
**common** [1] - 10:10
**companies** [2] - 1:7, 13:8
**company** [1] - 15:17
**compelling** [1] - 16:15
**Complaint** [5] - 4:14, 4:22, 4:23, 5:15, 17:1
**completed** [1] - 19:5
**completely** [2] - 9:13, 12:17
**concluded** [1] - 19:12
**conducted** [1] - 11:4
**conflate** [1] - 12:12
**conformed** [1] - 20:7
**Congress** [2] - 18:11, 18:23
**consumers** [5] - 15:25, 16:11, 16:6, 16:11, 16:14
**contemplate** [1] - 18:9
**contention** [1] - 10:22
**contracting** [1] - 17:22
**contracts** [1] - 7:15
**contrary** [1] - 14:12
**core** [1] - 7:10
**corporate** [1] - 11:14
**correct** [3] - 7:4, 17:6, 20:4
**correctly** [1] - 10:25
**counsel** [5] - 3:6, 3:18, 8:25, 10:6, 17:24, 18:1
**counsel's** [1] - 9:6
**country** [1] - 12:6
**County** [1] - 1:3
**course** [3] - 6:25,

2

12:3, 16:19
**Court** [26] - 4:2, 4:9,
4:18, 6:12, 6:13,
6:17, 7:1, 7:2, 8:5,
9:1, 9:2, 9:4, 9:22,
10:12, 11:3, 12:7,
12:8, 12:14, 13:1,
13:6, 14:23, 20:13
**COURT** [27] - 1:1,
1:18, 2:14, 3:2, 3:12,
3:19, 3:22, 4:25, 5:4,
5:6, 5:10, 5:14, 6:2,
7:2, 7:8, 7:18, 8:1,
8:16, 8:21, 8:24,
11:19, 13:15, 14:10,
17:2, 17:16, 17:18,
19:2
**Court's** [1] - 6:7
**Courthouse** [1] - 2:14
**Courts** [1] - 6:22
**credit** [2] - 9:19, 10:1
**Credit** [2] - 10:9, 11:17
**creditor** [4] - 9:18,
10:6, 10:8, 12:25
**creditors** [3] - 10:11,
13:10, 13:12
**CRR** [2] - 2:14, 20:12
**CSR** [3] - 2:14, 20:12,
20:13

## D

**DATE** [1] - 20:12
**Debt** [3] - 18:14,
18:17, 18:20
**debt** [65] - 4:4, 4:5,
4:10, 4:11, 4:16,
4:24, 5:19, 5:21,
5:24, 5:25, 6:8, 6:15,
6:17, 6:18, 6:23,
6:25, 7:4, 7:11, 7:12,
7:14, 7:16, 7:21,
7:24, 8:6, 8:7, 8:8,
9:15, 10:3, 10:4,
10:19, 10:20, 11:16,
12:4, 12:15, 12:23,
13:4, 13:14, 13:18,
13:19, 15:3, 15:8,
15:11, 15:14, 15:16,
15:18, 15:20, 15:22,
16:2, 16:14, 16:15,
16:23, 17:2, 17:3,
17:7, 17:10, 18:2,
18:6, 18:9, 18:15,
18:19, 18:24
**debts** [15] - 6:18, 6:24,
9:24, 10:2, 10:13,
11:8, 11:11, 12:21,
12:22, 12:23, 13:13,
13:25, 15:1, 15:4,

19:1
**decide** [3] - 12:8,
12:16, 15:21
**decided** [9] - 4:9, 5:3,
5:6, 5:8, 5:11, 7:11,
7:13, 8:15, 12:7
**deciding** [1] - 6:12
**decision** [3] - 6:11,
6:13, 9:16
**decisions** [1] - 4:3
**deemed** [2] - 4:4, 4:11
**default** [3] - 6:19,
6:24, 8:8
**defaulted** [1] - 10:2
**defeat** [2] - 6:21, 8:12
**DEFENDANT** [1] - 2:8
**defendant** [5] - 3:18,
10:24, 11:5, 11:18,
12:3
**Defendant** [2] - 3:15,
11:2
**defendant's** [1] - 9:6
**defendants** [2] - 11:6,
11:14
**Defendants** [1] - 1:8
**defense** [5] - 3:20,
8:25, 9:6, 10:5,
13:17
**defense's** [1] - 13:22
**define** [4] - 7:4, 13:15,
13:20, 14:7
**defined** [2] - 14:12,
17:13
**defining** [2] - 6:8, 7:21
**definition** [11] - 4:11,
5:20, 5:21, 5:25, 8:3,
9:8, 9:10, 10:11,
12:15, 12:16, 18:22
**description** [1] - 14:8
**determine** [1] - 17:12
**determined** [1] - 7:17
**difference** [2] - 5:16,
18:5
**different** [4] - 7:3, 7:4,
12:18, 15:19
**digitally** [1] - 20:7
**discovered** [1] - 16:8
**discovery** [5] - 10:22,
10:23, 11:4, 11:24,
14:19
**discuss** [1] - 9:9
**discussion** [1] - 9:12
**dismiss** [4] - 4:13, 5:7,
5:12, 6:4
**disposing** [1] - 6:4
**DISTRICT** [3] - 1:1,
1:2, 1:18
**District** [6] - 2:14, 4:8,
4:18, 4:19, 4:21,
18:4

**DNF** [13] - 1:7, 3:15,
4:16, 4:24, 9:15,
10:19, 11:2, 13:4,
15:12, 15:17, 16:5,
17:21, 18:21
**doors** [1] - 14:1
**down** [1] - 7:9
**due** [2] - 7:12, 9:24

## E

**efforts** [1] - 7:15
**Encore** [1] - 11:10
**enlarge** [1] - 18:10
**entities** [3] - 10:10,
12:19, 13:4
**entity** [6] - 9:25, 11:14,
14:19, 15:4, 16:20,
16:21
**especially** [1] - 17:6
**established** [1] -
14:18
**establishing** [1] -
11:15
**et** [1] - 3:4
**evidence** [2] - 11:5,
11:24
**exactly** [1] - 14:11
**expressly** [2] - 7:1,
18:4
**extending** [1] - 9:19
**extends** [1] - 10:1

## F

**facilitate** [1] - 16:1
**fact** [4] - 4:15, 4:16,
16:15, 17:24
**facts** [8] - 10:18,
10:22, 10:23, 11:15,
12:6, 12:8, 14:18,
16:12
**factual** [2] - 4:15
**factually** [1] - 4:23
**fails** [1] - 4:14
**Fair** [2] - 18:17, 18:20
**fair** [1] - 11:13
**fall** [1] - 13:4
**Fargo** [1] - 10:8
**FDCPA** [5] - 5:19,
10:8, 12:4, 12:14,
13:7
**federal** [2] - 18:18
**Fifth** [1] - 2:12
**figured** [1] - 6:3
**file** [2] - 3:25, 18:3
**filed** [3] - 16:8, 16:9,
16:11
**filing** [2] - 16:5, 16:14
**first** [11] - 5:20, 7:20,

9:3, 9:5, 10:5, 10:16,
12:13, 12:16, 13:2,
17:7
**flaws** [1] - 11:23
**flipper** [1] - 15:6
**flipping** [1] - 15:9
**FOR** [3] - 1:2, 2:2, 2:8
**foregoing** [1] - 20:4
**foreign** [1] - 1:7
**form** [1] - 16:15
**Fountain** [1] - 2:9
**Fox** [1] - 16:18
**frankly** [1] - 14:15
**Friedman** [2] - 2:8,
3:15
**fully** [1] - 6:10
**Funding** [6] - 5:5,
11:6, 11:16, 11:25,
12:3, 12:9

## G

**gaping** [1] - 13:7
**generally** [3] - 8:13,
10:1, 17:4
**gigantic** [1] - 13:7
**given** [4] - 4:17, 4:22,
14:24, 16:24
**Gold** [15] - 4:3, 4:20,
6:5, 11:1, 11:2,
11:13, 11:19, 11:21,
12:2, 12:8, 14:10,
14:21, 14:23
**guess** [2] - 12:1, 15:9

## H

**hand** [1] - 12:10
**head** [1] - 15:12
**hear** [1] - 8:17
**HEARING** [1] - 1:15
**heavily** [2] - 11:2,
11:23
**held** [2] - 5:19, 11:8
**Henson** [23] - 4:8,
4:18, 6:6, 6:12, 6:13,
6:19, 7:1, 7:2, 7:11,
7:13, 7:18, 8:2, 8:4,
8:12, 8:15, 8:25, 9:2,
9:10, 9:11, 9:13,
9:22, 10:12, 13:1
**HERNANDEZ** [1] -
1:17
**highlighted** [1] - 6:16
**hindsight** [1] - 12:1
**hire** [2] - 13:19, 15:18
**hiring** [1] - 13:9
**hold** [2] - 4:3, 4:23
**hole** [1] - 13:7
**home** [1] - 3:25

**honestly** [1] - 11:24
**Honor** [21] - 3:3, 3:9,
3:11, 3:14, 3:17, 4:1,
5:13, 8:20, 9:14,
10:21, 10:24, 12:10,
14:15, 16:3, 16:24,
17:6, 17:17, 17:24,
19:7, 19:8, 19:9
**HONORABLE** [1] -
1:17
**house** [1] - 15:6

## I

**idea** [1] - 14:8
**important** [3] - 6:16,
8:4, 8:12
**IN** [1] - 1:1
**inapplicable** [1] - 13:1
**include** [1] - 18:24
**including** [1] - 15:25
**incorrectly** [1] - 12:11
**indeed** [1] - 11:16
**independent** [1] -
12:17
**index** [1] - 6:10
**Indiana** [3] - 4:8, 4:25,
18:4
**individual** [1] - 1:3
**industry** [1] - 9:17
**information** [2] -
10:19, 15:24
**initial** [1] - 5:18
**instrumentality** [1] -
7:22
**intent** [1] - 13:11
**interestingly** [1] - 6:9
**interstate** [1] - 7:22
**introduction** [1] -
17:20
**irrelevant** [1] - 9:13
**issue** [8] - 5:11, 7:10,
7:12, 7:13, 9:3, 9:25,
12:9, 14:13
**itself** [1] - 16:5

## J

**jam** [1] - 3:25
**JILLIAN** [1] - 1:3
**JONES** [10] - 3:8,
8:20, 8:22, 8:25,
11:21, 13:22, 14:14,
17:6, 17:17, 19:7
**Jones** [2] - 2:5, 3:8
**Jordan** [2] - 2:11,
2:11, 3:17
**JUDGE** [1] - 1:18
**judge** [1] - 5:23
**Judge** [4] - 3:24, 5:17,

17:19, 18:2
**judgment** [7] - 5:7,
  5:9, 5:12, 6:3, 10:25,
  11:3, 14:17
**July** [1] - 16:9
**June** [2] - 4:9, 6:12

## K

**Kasalo** [8] - 4:3, 6:5,
  11:2, 11:23, 12:10,
  14:11, 14:15, 14:17
**keep** [1] - 15:23
**Kelly** [2] - 2:5, 3:8
**Kevin** [3] - 2:2, 2:2,
  3:10
**keyhole** [1] - 13:24
**kind** [5] - 4:15, 6:14,
  13:15, 15:5, 15:9
**knocking** [1] - 14:1
**known** [1] - 16:12

## L

**landscape** [1] - 4:22
**larger** [2] - 15:8, 17:8
**Law** [3] - 2:2, 2:5, 2:11
**law** [1] - 4:17
**lawsuits** [4] - 12:4,
  16:5, 16:14, 18:3
**lawyer** [1] - 16:21
**least** [1] - 18:13
**leave** [2] - 13:7, 16:24
**left** [2] - 7:13, 7:17
**legal** [1] - 16:19
**legislature** [1] - 18:16
**Lending** [1] - 9:19
**less** [1] - 14:18
**letters** [3] - 4:5, 18:7,
  18:25
**level** [1] - 16:23
**liability** [1] - 1:7
**liable** [1] - 5:19
**limited** [2] - 1:7, 12:22
**Lippes** [2] - 2:8, 3:15
**liquidate** [1] - 17:22
**literally** [1] - 13:25
**litigation** [1] - 17:20
**LITTLE** [16] - 3:14,
  3:21, 3:24, 5:2, 5:5,
  5:8, 5:13, 5:17, 6:5,
  7:7, 7:10, 7:25, 8:4,
  8:19, 17:19, 19:9
**LLC** [6] - 1:6, 1:7, 3:4,
  3:16, 5:5, 11:7
**LLP** [1] - 2:8
**local** [1] - 3:18
**look** [8] - 6:23, 9:22,
  10:16, 13:2, 13:24,
  14:6, 15:1, 17:7

**Look** [1] - 5:23
**looked** [1] - 10:12
**looking** [1] - 8:14
**love** [1] - 9:18
**LVNV** [2] - 5:5, 5:24

## M

**M.N.S** [2] - 1:6, 3:4
**mails** [1] - 7:22
**Management** [2] -
  11:10, 11:17
**MARCO** [1] - 1:17
**market** [2] - 15:5,
  15:15
**Mathias** [2] - 2:8, 3:15
**matter** [4] - 6:17, 8:6,
  17:2, 19:3
**McAdory** [4] - 1:3, 3:4,
  3:8, 16:20
**mean** [3] - 8:1, 12:1,
  14:16
**meaning** [2] - 4:12,
  18:6
**meet** [4] - 5:20, 5:25,
  10:11, 18:2
**MEHRENS** [2] - 3:10,
  19:8
**Mehrens** [3] - 2:2, 2:2,
  3:10
**memory** [1] - 14:17
**merely** [1] - 10:12
**Michael** [1] - 2:11
**Midland** [6] - 11:6,
  11:16, 11:17, 11:25,
  12:3, 12:9
**mirrors** [1] - 9:1
**Mitchell** [5] - 4:8, 5:5,
  5:22, 6:10, 17:25
**money** [2] - 14:5,
  15:11
**moot** [1] - 6:1
**morning** [6] - 3:12,
  3:14, 3:17, 3:19,
  8:20, 8:21
**Morrison** [1] - 2:6
**most** [1] - 16:15
**motion** [12] - 3:22,
  4:13, 5:7, 5:8, 5:11,
  6:4, 6:21, 7:14, 8:12,
  11:3, 14:17
**MOTION** [1] - 1:15
**motions** [2] - 5:13,
  10:25
**MR** [29] - 3:8, 3:10,
  3:14, 3:17, 3:21,
  3:24, 5:2, 5:5, 5:8,
  5:13, 5:17, 6:5, 7:7,
  7:10, 7:25, 8:4, 8:19,
  8:20, 8:22, 8:25,

11:21, 13:22, 14:14,
  17:6, 17:17, 17:19,
  19:7, 19:8, 19:9
**Multnomah** [1] - 1:3
**must** [1] - 6:25
**myriad** [1] - 12:3

## N

**name** [7] - 5:4, 12:5,
  12:6, 16:6, 16:21,
  16:22, 18:3
**nancy** [1] - 2:14
**Nancy** [1] - 20:11
**NANCY** [1] - 20:12
**narrowed** [1] - 7:14
**narrowly** [2] - 14:7,
  14:12
**necessarily** [2] -
  14:22, 17:9
**necessary** [1] - 16:25
**need** [5] - 3:25, 5:23,
  10:16, 10:21, 18:10
**network** [1] - 15:21
**New** [3] - 2:11, 2:11,
  3:17
**NEW** [2] - 3:17, 3:18
**newest** [1] - 4:7
**Ninth** [3] - 4:20, 5:18,
  16:18
**Northern** [3] - 4:7,
  4:21, 18:4
**nothing** [4] - 9:3, 9:16,
  9:18, 14:24
**Nothing** [1] - 9:10
**number** [5] - 6:10, 7:5,
  7:6, 7:8
**numbers** [1] - 15:25
**NY** [1] - 2:10

## O

**object** [1] - 17:19
**objective** [2] - 17:8,
  17:15
**obviously** [1] - 15:21
**October** [1] - 1:5
**OF** [2] - 1:2, 1:16
**offered** [1] - 11:5
**Office** [1] - 2:11
**Offices** [1] - 2:2
**Official** [1] - 20:13
**once** [1] - 12:23
**one** [10] - 4:19, 7:5,
  7:6, 10:10, 11:6,
  14:4, 14:25, 16:7,
  18:13
**oOo** [1] - 20:1
**open** [1] - 7:13
**operation** [1] - 15:12

**opinion** [3] - 5:24,
  11:23, 19:4
**opponent** [2] - 6:20,
  8:11
**opportunity** [1] -
  17:25
**opposed** [2] - 6:3,
  17:5
**opposing** [1] - 17:24
**OR** [4] - 2:4, 2:7, 2:13,
  2:15
**oral** [1] - 3:3
**orchestrate** [1] - 15:21
**order** [3] - 5:19, 19:1,
  19:4
**OREGON** [1] - 1:2
**Oregon** [5] - 1:6, 4:19,
  16:6, 20:13
**original** [8] - 9:18,
  10:6, 10:8, 10:11,
  12:25, 13:10, 13:11,
  20:6
**originated** [1] - 10:14
**otherwise** [1] - 10:19
**outside** [1] - 4:19
**overall** [3] - 17:9,
  17:12, 17:13
**owed** [2] - 7:12, 9:24
**own** [8] - 12:5, 12:6,
  15:1, 16:6, 16:21,
  16:22, 18:3, 18:19
**owned** [1] - 10:13
**owns** [2] - 12:24,
  17:23

## P

**paragraphs** [1] - 7:3
**parameters** [1] - 15:22
**part** [2] - 8:2, 9:23
**participants** [1] - 3:5
**particular** [3] - 11:1,
  14:19, 17:10
**parties** [2] - 7:16,
  13:12
**parts** [2] - 9:8, 11:22
**party** [2] - 10:13,
  17:22
**PC** [1] - 2:11
**Pennsylvania** [1] -
  6:22
**people** [4] - 7:19,
  12:5, 16:17
**performing** [1] - 8:7
**perhaps** [1] - 15:4
**perspective** [2] - 5:11,
  14:12
**phase** [1] - 14:19
**phone** [4] - 2:8, 2:11,
  3:5, 3:13

**phrase** [1] - 7:21
**phrases** [1] - 7:5
**plaintiff** [6] - 3:8, 3:10,
  7:20, 9:7, 10:18,
  11:5, 11:13, 12:1,
  17:10
**Plaintiff** [1] - 1:4
**PLAINTIFF** [1] - 2:2
**plaintiff's** [3] - 3:6,
  16:13, 18:1
**plaintiffs** [1] - 10:7
**Plaza** [1] - 2:9
**point** [3] - 3:25, 11:12,
  12:12
**pointed** [2] - 10:21,
  10:25
**points** [1] - 14:2
**policy** [1] - 13:6
**portfolio** [1] - 10:2
**Portland** [5] - 1:6, 2:4,
  2:7, 2:13, 2:15
**position** [2] - 4:13,
  11:19
**possible** [2] - 4:22,
  15:2
**post** [1] - 4:8
**post-Henson** [1] - 4:8
**Practices** [1] - 18:17
**pre** [2] - 6:6, 9:11
**pre-Henson** [2] - 6:6,
  9:11
**principal** [28] - 4:4,
  7:16, 7:23, 9:8, 9:9,
  9:13, 10:17, 10:20,
  12:20, 13:13, 13:16,
  13:17, 13:18, 13:20,
  13:24, 14:4, 14:7,
  14:8, 14:20, 15:3,
  15:7, 15:13, 15:15,
  17:7, 17:8, 17:12
**principle** [3] - 6:16,
  6:21, 8:13
**principles** [1] - 16:19
**PROCEEDINGS** [1] -
  1:16
**proceedings** [2] -
  19:12, 20:5
**process** [1] - 6:7
**profits** [2] - 15:20,
  17:14
**prong** [19] - 7:17,
  8:14, 9:3, 9:5, 9:23,
  10:5, 10:13, 10:15,
  10:16, 12:13, 12:16,
  12:17, 12:21, 12:25,
  13:2, 17:7
**prongs** [2] - 9:21, 13:3
**provide** [2] - 15:24,
  16:19
**provisions** [1] - 13:5

**purchase** [2] - 10:1, 13:13
**purchased** [3] - 6:18, 10:14, 11:8
**purchasers** [1] - 13:4
**purchases** [2] - 12:23, 15:4
**purchasing** [1] - 6:23
**purpose** [31] - 4:4, 7:16, 7:23, 9:8, 9:10, 9:13, 10:17, 10:20, 11:7, 12:20, 12:21, 13:13, 13:16, 13:18, 13:21, 13:25, 14:4, 14:7, 14:9, 14:20, 15:3, 15:8, 15:14, 15:15, 17:7, 17:8, 17:9, 17:12, 17:13, 17:14
**purposefully** [1] - 12:18
**pursuant** [1] - 4:14
**put** [4] - 11:15, 12:2, 16:25

**Q**

**quite** [4] - 11:2, 11:23, 14:12, 14:15
**quote** [1] - 15:2

**R**

**rather** [1] - 12:24
**rationale** [3] - 6:7, 6:23, 8:10
**read** [4] - 3:23, 6:11, 14:10, 17:25
**realize** [1] - 6:14
**realized** [1] - 9:2
**really** [2] - 9:1, 17:14
**reap** [1] - 15:20
**reasoned** [1] - 12:11
**reasoning** [5] - 6:7, 6:22, 14:3, 14:16, 14:21
**reasons** [1] - 12:11
**receivable** [1] - 8:8
**recognize** [1] - 6:14
**record** [1] - 20:4
**refers** [1] - 12:15
**regarding** [2] - 5:16, 6:1
**regularly** [2] - 7:19, 9:24
**regulate** [4] - 9:17, 12:18, 13:11, 13:12
**regulates** [1] - 9:17
**rejected** [2] - 7:1, 18:4
**rejecting** [1] - 8:13

**relevant** [2] - 16:24, 17:11
**Reliable** [1] - 10:9
**relies** [3] - 6:20, 8:11, 11:2
**rely** [2] - 6:21, 11:22
**relying** [1] - 7:20
**Reporter** [1] - 20:13
**REPORTER** [1] - 2:14
**research** [1] - 19:5
**reselling** [1] - 15:15
**residing** [1] - 1:3
**respect** [1] - 4:3
**response** [3] - 16:8, 16:9, 17:18
**rest** [1] - 16:9
**result** [1] - 18:8
**RMR** [2] - 2:14, 20:12
**Room** [1] - 2:15
**Rosenthal** [1] - 18:17
**Rule** [1] - 11:1

**S**

**sale** [1] - 10:15
**Santander** [2] - 9:25, 10:3
**scenario** [1] - 17:21
**scholarly** [1] - 18:22
**scope** [1] - 18:11
**seated** [1] - 3:2
**Second** [1] - 4:23
**second** [7] - 9:23, 10:13, 10:15, 12:13, 12:16, 12:21, 12:25
**section** [1] - 12:13
**Security** [1] - 15:25
**see** [4] - 5:22, 10:6, 18:5, 18:6
**seller** [1] - 15:14
**selling** [1] - 15:10
**sells** [1] - 15:5
**send** [1] - 18:25
**sending** [3] - 4:5, 18:7, 19:4
**sense** [1] - 15:8
**sensitive** [1] - 15:24
**September** [1] - 5:3
**show** [1] - 11:15
**shows** [1] - 16:18
**side** [1] - 8:17
**signature** [3] - 20:6, 20:7
**signed** [1] - 20:7
**signing** [1] - 20:3
**simply** [3] - 11:3, 12:12, 13:8
**sitting** [1] - 11:21
**small** [1] - 13:24

**smoke** [1] - 9:1
**Social** [1] - 15:25
**sort** [1] - 14:3
**special** [1] - 11:7
**specific** [1] - 8:22
**specifically** [4] - 4:20, 6:13, 6:21, 18:15
**speed** [1] - 3:24
**start** [1] - 8:23
**started** [1] - 16:5
**state** [5] - 4:14, 4:17, 4:23, 18:13, 18:18
**statement** [1] - 14:25
**STATES** [2] - 1:1, 1:18
**States** [1] - 2:14
**statute** [6] - 4:11, 9:17, 11:16, 18:9, 18:11, 18:24
**statutory** [2] - 5:21, 5:25
**still** [4] - 15:7, 15:8, 17:11, 18:5
**Street** [2] - 2:3, 2:6
**strictly** [1] - 12:22
**structure** [1] - 13:8
**stuff** [2] - 3:23, 14:1
**successful** [1] - 15:20
**sue** [4] - 12:4, 16:2, 16:17, 16:20
**sues** [1] - 16:21
**suggesting** [2] - 17:3, 18:23
**suing** [1] - 16:22
**Suite** [4] - 2:3, 2:6, 2:9, 2:12
**summary** [7] - 5:7, 5:8, 5:12, 6:3, 10:25, 11:3, 14:17
**supplemental** [2] - 4:1, 17:1
**support** [1] - 4:15
**supports** [1] - 9:7
**Supreme** [13] - 4:9, 4:18, 6:6, 6:12, 6:17, 7:1, 7:2, 8:5, 9:2, 9:4, 9:22, 10:12, 13:1

**T**

**telephone** [3] - 4:6, 18:7, 18:25
**tens** [1] - 12:5
**THE** [30] - 1:1, 1:2, 1:17, 2:2, 2:8, 3:2, 3:3, 3:12, 3:19, 3:22, 4:25, 5:4, 5:6, 5:10, 5:14, 6:2, 7:2, 7:8, 7:18, 8:1, 8:16, 8:21, 8:24, 11:19, 13:15,

14:10, 17:2, 17:16, 17:18, 19:2
**themselves** [1] - 13:8
**theory** [1] - 5:24
**Third** [2] - 2:15
**third** [4] - 4:2, 7:16, 13:12, 17:22
**thousands** [1] - 12:5
**three** [1] - 4:18
**titled** [1] - 20:5
**today** [1] - 19:2
**transcript** [2] - 20:4, 20:6
**TRANSCRIPT** [1] - 1:16
**Trident** [1] - 14:20
**tried** [1] - 10:7
**triggers** [1] - 17:4
**true** [1] - 14:8
**Truth** [1] - 9:19
**two** [11] - 3:5, 4:7, 7:3, 7:4, 7:5, 7:8, 9:20, 11:14, 12:17, 13:3, 14:5
**type** [1] - 17:11
**types** [1] - 12:18

**U**

**umbrella** [1] - 11:9
**under** [6] - 5:19, 10:4, 10:7, 11:16, 13:4, 19:3
**underneath** [1] - 11:9
**UNITED** [2] - 1:1, 1:18
**United** [1] - 2:14
**unlike** [1] - 16:17
**unquote** [1] - 15:2
**up** [1] - 3:24
**upside** [1] - 7:9
**uses** [2] - 7:21, 16:21

**V**

**various** [1] - 15:18
**vehicle** [1] - 11:8
**verb** [2] - 4:12, 18:6
**version** [1] - 18:18
**versus** [1] - 3:4
**vs** [1] - 1:5

**W**

**wait** [1] - 6:2
**WALKER** [1] - 20:12
**Walker** [2] - 2:14, 20:11
**Washington** [1] - 2:3
**weeks** [1] - 4:7
**Wells** [1] - 10:8

**Westlaw** [1] - 5:2
**Wexler** [2] - 2:8, 3:15
**whatnot** [1] - 10:15
**whole** [1] - 15:21

**Y**

**year** [2] - 5:3, 6:12
**yourself** [1] - 3:7